

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-1999

# Sandoval v. Reno

Precedential or Non-Precedential:

Docket 98-1099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Sandoval v. Reno" (1999). *1999 Decisions.* Paper 23.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/23

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 26, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1099* and 98-1547*

REYNALDO SANDOVAL,
Petitioner/Appellee

v.

JANET RENO, ATTORNEY GENERAL; DORIS MEISSNER,
COMMISSIONER OF THE IMMIGRATION AND
NATURALIZATION SERVICE, IMMIGRATION AND
NATURALIZATION SERVICE, DEPARTMENT OF JUSTICE;
AND J. SCOTT BLACKMAN, ACTING DISTRICT DIRECTOR
OF THE IMMIGRATION AND NATURALIZATION SERVICE,
Respondents/Appellants

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 97-cv-07298 and 98-cv-02218)
District Court Judge: Hon. Edward N. Cahn, Chief Judge

No. 98-3214

REYNALDO SANDOVAL,
Petitioner

v.

IMMIGRATION & NATURALIZATION SERVICE,
Respondent

_____

*Nos. 98-1099 and 98-1547 were consolidated for all purposes.

On Petition for Review of an Order of
the Board of Immigration Appeals
(A90 562 282)

Argued September 28, 1998

Before: SLOVITER, SCIRICA and ALITO, Circuit Judges

(Filed January 26, 1999)

        Frank W. Hunger
         Assistant Attorney General
        Christopher C. Fuller
         Senior Litigation Counsel
        Michael P. Lindemann
         Assistant Director
        Madeline Henley (Argued)
        United States Department of Justice
        Washington, D.C. 20044

         Attorneys for
        Respondents/Appellants

        Lee Gelernt (Argued)
        Lucas Guttentag
        Cecillia Wang
        American Civil Liberties Union
        Immigrants' Rights Project
        New York, N.Y. 10004-2400

        Steven A. Morley (Argued)
        Bagia & Morley
        Philadelphia, PA 19106

         Attorneys for Appellee/Petitioner

2

Lenni B. Benson
New York Law School
New York, N.Y. 10013

Jeffrey A. Heller
Seton Hall University School of Law
Newark, N.J. 07102

Attorneys for Amici Law Professors

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

INTRODUCTION

In 1996, the 104th Congress passed, and the President signed into law, two bills that made sweeping changes in the immigration laws: the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996). This case concerns the effect of these statutes on the jurisdiction of a district court to issue a writ of habeas corpus sought by an alien because of a decision by the Immigration and Naturalization Service ("INS") to deport the alien by reason of his having committed a criminal act listed in IIRIRA.

In the case before us, the District Court granted in part Reynaldo Sandoval's petition for a writ of habeas corpus. The Attorney General, the INS, the INS Commissioner, and the Acting Regional Director of the INS (collectively "the government") appeal from the District Court's exercise of jurisdiction under 28 U.S.C. S 2241 and from its subsequent decision on the merits. Sandoval's brief as appellee is supported by an amicus brief filed by a group of twenty-three law professors urging affirmance of the District Court.

The jurisdictional question is whether, in enacting AEDPA and IIRIRA, Congress stripped the district courts of habeas jurisdiction over deportation proceedings, an inquiry that could implicate the Suspension Clause of the Constitution. If the District Court had jurisdiction, we will have to decide a question of statutory interpretation: whether AEDPA S 440(d), a statutory change that occurred while Sandoval's case was pending and that makes aliens who have been found guilty of drug offenses ineligible for discretionary relief under S 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. S 1182 (Supp. 1996) (repealed effective April 1, 1997), applies to Sandoval. Only if AEDPA S 440(d) does apply to Sandoval would we need to reach his argument that the provision violates equal protection by precluding deportable aliens who have been convicted of certain crimes from obtaining S 212(c) relief but not precluding excludable aliens who are otherwise identically situated from obtaining that relief, an issue not reached by the District Court.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Sandoval, a citizen of Mexico, entered the United States without inspection in 1986. In 1987, he was granted temporary resident status as a Special Agricultural Worker under the amnesty program set up by the Immigration Reform and Control Act of 1986 S 302, 8 U.S.C.S 1160. Pursuant to the amnesty program, he was granted Lawful Permanent Resident status in 1990. Accordingly, Sandoval was entitled to remain in the country, and eventually qualify for citizenship, provided that he did not commit an act subjecting him to deportation. In 1993, Sandoval was convicted in a state court of marijuana possession, which conviction subjected him to deportation under INA S 241(a)(2)(B)(I), 8 U.S.C. S 1251(a)(2)(B)(1) (current version at 8 U.S.C. S 1227(a)(2)(B)(I)).

The deportation hearing was held on June 14, 1994. Sandoval requested a four-month stay, apparently because at the end of that four months he would have completed

4

seven years as a legal immigrant, a prerequisite for eligibility for discretionary relief under INA S 212(c). Section 212(c), as it stood at the time, granted the Attorney General discretion to admit an otherwise deportable alien if the alien had established lawful domicile for seven or more years; the provision barred such relief where the alien had committed two or more crimes of moral turpitude, but did not then foreclose discretionary relief in cases where the alien was deportable solely for having committed a drug offense. The Immigration Judge ("IJ") denied the stay and ruled that (1) Sandoval was deportable, and (2) he had not met the seven-year lawful domicile requirement for eligibility for discretionary relief. Sandoval then appealed this decision to the Board of Immigration Appeals ("BIA").

While Sandoval's appeal was pending, Congress passed AEDPA. Section 440(d) of that Act amended INA S 212(c) so as to make discretionary relief unavailable to those aliens who have been convicted of, inter alia, any of the drug offenses set forth in INA S 241(a)(2)(B)(I). On July 16, 1997, the BIA dismissed Sandoval's appeal, noting that AEDPA's amendment of S 212(c) rendered Sandoval "statutorily ineligible for section 212(c) relief." In doing so, the BIA cited the Attorney General's ruling that AEDPA's revision of S 212(c) applies to pending cases. See Matter of Soriano, Interim Decision 3289 (A.G. Feb. 21, 1997). The BIA's decision rendered Sandoval's deportation order administratively final on July 16, 1997. Because Sandoval had attained seven years of domicile before his deportation order became final, the statutory residency requirement has been met and is no longer an issue in this case. See 8 C.F.R. S 3.2(c)(1). Consequently, the amendment to S 212(c) effected by AEDPA is the only ground for statutory ineligibility advanced by the government.

In October, Sandoval filed a motion with the BIA, requesting that the INS reopen his case. He also requested a stay of deportation from the District Director, which was denied. On December 1, 1997, Sandoval filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. His petition argued that AEDPA's change to S 212(c) does not apply to cases pending on the date of enactment (and therefore that the

5

Soriano decision was incorrect). He also argued that AEDPA S 440(d) violates equal protection. The government moved to dismiss for lack of jurisdiction.

The District Court ruled that it had habeas jurisdiction under 28 U.S.C. S 2241, reasoning that the relevant provisions of AEDPA and IIRIRA did not effect a repeal of S 2241 in deportation cases. The court proceeded to rule on the merits of the petition and held that AEDPA S 440(d) does not apply to cases that were pending when the statute was enacted. Employing the principles set forth in Landgraf v. USI Film Prods., 511 U.S. 244 (1994), and elaborated in Lindh v. Murphy, 521 U.S. 320 (1997), the District Court held that Congress expressed its intent not to apply S 440(d) to pending cases. In so doing, the court did not reach any constitutional issue relating to habeas jurisdiction or the equal protection challenge to AEDPA S 440(d). Consequently, the District Court granted Sandoval's petition in part, ordered the INS to entertain the merits of his S 212(c) request and enjoined the government from deporting Sandoval pending a decision on the merits of his S 212(c) request.

The government appeals this decision. While this appeal was pending, the BIA denied Sandoval's motion to reopen, and Sandoval then filed a Petition for Review with this court. On August 19, 1998, we consolidated the government's appeal with Sandoval's Petition for Review.

III.

DISCUSSION

A.

Jurisdiction

1. The Applicable Statutory Changes

On April 24, 1996 the President signed AEDPA into law, and on September 30, 1996 IIRIRA was enacted. These two statutes altered many of the substantive provisions of the

6

Immigration and Nationality Act (INA) and also made
significant changes in INA's provisions relating to judicial
review. Prior to the enactment of AEDPA, judicial review of
deportation orders ordinarily proceeded by a Petition for
Review of the INA decision filed in the court of appeals. See
Majority op. at 16 infra. At the same time, INA S 106(a)(10)
provided for review of a deportation order by habeas corpus
proceeding. AEDPA S 401(e) deleted the former text of INA
S 106(a)(10). AEDPA S 440(a) substituted therefor the
following language: "Any final order of deportation against
an alien who is deportable by reason of having committed
a criminal offense [covered in the deportation provisions of
the INA] shall not be subject to review by any court."1

The judicial review structure for deportation orders was
altered several months later with the passage of IIRIRA on
September 30, 1996. IIRIRA contains two different sets of
rules: the "permanent rules" which generally became
effective on April 1, 1997, see IIRIRA S 309(a), and the
"transitional changes in judicial review" ("transitional
rules"), which generally became effective on October 30,
1996 and which apply to aliens who were placed in removal
proceedings before April 1, 1997.2

_____

1. AEDPA S 440(a), which was codified at 8 U.S.C. S 1105a(a)(10), states
in part:

> Judicial Review.--Section 106 of the Immigration and Nationality
> Act . . . is amended to read as follows:
>
> (10) Any final order of deportation against an alien who is
> deportable by reason of having committed a criminal offense
> covered in section 241(a)(2) (A)(iii), (B), (C), or (D) or any
offense
> covered by section 241(a)(2)(A)(ii) for which both predicate
offenses
> are covered by section 241(a)(2)(A)(I), shall not be subject to
review
> by any court.

Section 1105a was repealed by IIRIRA S 306(b) with respect to
deportation proceedings that were initiated on or after April 1, 1997. See
IIRIRA SS 306(b), (c), 309. For such proceedings, IIRIRA substitutes new
judicial review provisions. See IIRIRA S 306(a). Because Sandoval's
deportation proceedings commenced before April 1, 1997, the repealer
and the new judicial review rules do not apply to his case.

2. Both sets of rules were clarified by technical amendments enacted on
October 11, 1997, Pub. L. 104–302, 110 Stat. 3656, 3657.

One of the transitional rules, IIRIRA S 309(c)(4)(G),
provides, in relevant part:

> [T]here shall be no appeal permitted in the case of an
> alien who is inadmissible or deportable by reason of
> having committed a criminal offense covered in section
> 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the
> Immigration and Nationality Act (as in effect as of the
> date of the enactment of this Act), or any offense
> covered by section 241(a)(2)(A)(ii) of such Act (as in
> effect on such date) for which both predicate offenses
> are, without regard to their date of commission,
> otherwise covered by section 241(a)(2)(A)(I) of such Act
> (as so in effect).[3]

Because Sandoval's deportation proceedings were initiated
before April 1, 1997 and his appeal was dismissed by the
BIA after October 30, 1996, that rule is applicable here.

Finally, IIRIRA S 306(a) amends INA S 242(g), 8 U.S.C.
S 1252(g), to provide: "Except as provided in this section
and notwithstanding any other provision of law, no court
shall have jurisdiction to hear any cause or claim by or on
behalf of any alien arising from the decision or action by
the Attorney General to commence proceedings, adjudicate
cases, or execute removal orders against any alien under
this Act."[4]

The District Court rejected the government's position that
this provision applies to Sandoval, basing its decision on
the general effective date provided by IIRIRA S 309(c)(1).
However, section 306(c)(1) states that "the amendments
made by subsections (a) and (b) [which contain the
permanent rules for judicial review] shall apply as provided
under section 309, except that subsection (g) of section 242

_____

3. By congressional directive, the transitional rules are not part of the
INA and are not codified in the United States Code.

4. IIRIRA dispenses with the terms "deportation" and "exclusion," groups
these categories under the rubric of "removal," and provides for the
uniform administration of removal proceedings. This opinion preserves
the distinction between "deportation" and"exclusion" because under
AEDPA--which governs this case by virtue of the transitional rules--that
distinction continues to have meaning.

of the Immigration and Nationality Act (as added by subsection (a)), shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act" (emphasis added). In light of this provision, we conclude that the government is correct in arguing that the amended INA S 242(g) applies to this case.

2. Recent Cases Construing the 1996 Amendments

The government argues that as a consequence of these three amendments effected by AEDPA and IIRIRA, the District Court had no habeas jurisdiction to review Sandoval's challenges to his final order of deportation. In the period following the filing of this appeal, the same question has been decided by five other circuits. Three of the decisions rejected the government's position; two have adopted the government's arguments.

In Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), the Court of Appeals for the First Circuit reversed the district court's dismissal of an alien's habeas petition, holding that Congress did not eliminate habeas jurisdiction under S 2241.

Shortly thereafter, in Henderson v. Reno, 157 F.3d 106 (2d Cir. 1998), the Court of Appeals for the Second Circuit affirmed the decisions of two district courts that they had jurisdiction under S 2241 to grant writs of habeas corpus to aliens who were deportable because they had committed listed crimes. The Second Circuit relied on its earlier decision in Jean-Baptiste v. Reno, 144 F.3d 212 (2d Cir. 1998), where it affirmed the dismissal of an alien's Petition for Review. In Jean-Baptiste, the court held that the foreclosure of judicial review did not offend the Constitution because habeas review under S 2241 remained intact.

Similarly, the Court of Appeals for the Ninth Circuit held in Magana-Pizano v. INS, 152 F.3d 1213 (9th Cir. 1998) (per curiam), that the district court retained habeas jurisdiction under S 2241 to hear the claim of an alien who had committed a drug offense. It reasoned that if IIRIRA were read to eliminate all judicial review of executive detention, it would violate the Suspension Clause. That circuit had previously held, in Hose v. INS, 141 F.3d 932 (9th Cir.

9

1998), that IIRIRA withdrew the jurisdiction of the district court to hear a habeas petition by an alien who sought to appeal an immigration judge's determination that she was excludable. The court noted that the Suspension Clause was not violated because Hose, who had not been convicted of a listed crime, could have filed a Petition for Review in the court of appeals, an option not available to Magana-Pizano. On December 2, 1998, the Ninth Circuit granted rehearing en banc and withdrew the Hose opinion. See Hose v. INS, 161 F.3d 1225 (9th Cir. 1998).

Although the Court of Appeals for the District of Columbia has not yet reached the question, a district court in that circuit held that neither AEDPA nor IIRIRA deprived it of its jurisdiction under the general habeas provision of 28 U.S.C. S 2241 to hear a similar claim by an alien. Lee v. Reno, 15 F. Supp. 2d 26 (D.D.C. 1998).

In recent months, two Courts of Appeals have taken a contrary position to that taken by the other three Courts of Appeals. In Richardson v. Reno, 1998 WL 850045 (11th Cir. Dec. 9, 1998), opinion vacated and superseded, 1998 WL 889376 (11th Cir. Dec. 22, 1998), the Court of Appeals for the Eleventh Circuit concluded that IIRIRA's amendment to INA S 242(g) did eliminate habeas jurisdiction under S 2241. The court further held that this elimination of jurisdiction suffered from no constitutional infirmity. Although the petitioner in Richardson was an alien who was detained upon re-entry into the United States, and therefore the case arose in a slightly different procedural posture, the case otherwise involves the same statutory provisions and applicable legal principles.

The Court of Appeals for the Seventh Circuit quickly followed Richardson in LaGuerre v. Reno , 1998 WL 912107 (7th Cir. December 22, 1998), with a similar holding. It agreed with the conclusion that AEDPA S 440(a) deprives the district courts of habeas jurisdiction with respect to the executive's detention of aliens who have been convicted of the enumerated crimes. The court proceeded to read the statute as permitting such aliens to bring constitutional challenges to their detention in the courts of appeals by means of a petition for review, notwithstanding the general bar to petitions for review in AEDPA. The court adopted this

construction of the statute on the basis of a "presumption that executive resolutions of constitutional issues are judicially reviewable." Id. at *4.

For the reasons set forth hereafter, we conclude that the district courts continue to have habeas jurisdiction under S 2241. Our colleague who dissents on this portion of our holding does so on the basis of the reasoning in LaGuerre. The resulting division among the courts on this important issue leaves the definitive interpretation for resolution by the Supreme Court.

In addition to those courts who have directly ruled on the issue, others have addressed the jurisdictional issue tangentially in another context. All of the Courts of Appeals who have decided that because of AEDPA and IIRIRA, they no longer had jurisdiction to entertain a Petition for Review from an alien who has been deported for any of the criminal activity referenced in INA S 241(a)(2)(C), have stated that some degree of judicial review under habeas corpus remains available, although they did not specify the scope of that review. See, e.g., Lerma de Garcia v. INS, 141 F.3d 215, 217 (5th Cir. 1998); Mansour v. INS, 123 F.3d 423, 426 (6th Cir. 1997); Ramallo v. Reno, 114 F.3d 1210, 1214 (D.C. Cir. 1997); Fernandez v. INS, 113 F.3d 1151, 1154 n.3 (10th Cir. 1997).

In this court's opinion in Morel v. INS, 144 F.3d 248 (3d Cir. 1998), we agreed with the other circuits on this issue. We too held that AEDPA S 440(a) deprived us of jurisdiction to entertain claims of legal error in a Petition for Review brought by an alien who was convicted of one of the crimes referenced in INA that disqualify an alien for S 212(c) discretionary relief. We were not faced with the issue of habeas jurisdiction in Morel and therefore did not address it, but in concluding that the elimination of our review jurisdiction was constitutional, we relied on the government's concession that some form of review for constitutional questions survived the enactment of AEDPA. Id. at 251.

3. Availability of Habeas Jurisdiction

We now address the issue we never reached in Morel: whether habeas jurisdiction remains available in the

11

district courts to review claims by aliens who have been ordered deported based on their criminal acts, notwithstanding the AEDPA and IIRIRA amendments relied on by the government. This question implicates the long-standing doctrine disfavoring repeal of jurisdictional statutes by implication.

The Supreme Court had occasion to apply this doctrine recently in Felker v. Turpin, 518 U.S. 651 (1996). Felker involved AEDPA S 106(b), which bars state inmates from filing "second or successive" habeas corpus petitions without first obtaining permission from a three-judge panel of the relevant court of appeals. The statute provides that a panel's grant or denial of authorization to file"shall not be appealable and shall not be the subject of a petition for . . . writ of certiorari." AEDPA S 106(b)(3)(E), codified at 28 U.S.C. S 2241(b)(3)(E). Noting that "[n]o provision of Title I mentions our authority to entertain original habeas petitions," the Court held that because repeals by implication are not favored, AEDPA's prohibition on certiorari jurisdiction over court of appeals panel decisions on second or successive petitions did not preclude the Supreme Court from exercising its original habeas jurisdiction under 28 U.S.C. SS 2241 and 2254. 518 U.S. at 660.

The Felker Court took guidance from Ex Parte Yerger, 75 U.S. 85 (1869), in which the Court, when faced with a similar repeal of its appellate jurisdiction well over a century ago, found that its habeas jurisdiction was intact. But to appreciate the significance of Yerger fully, we must go back to Ex Parte McCardle, 74 U.S. (7 Wall.) 506 (1869). McCardle, like Yerger, involved an 1867 statute that authorized the federal courts to entertain habeas petitions by state or federal prisoners and also authorized the Supreme Court to hear appeals from the federal courts in habeas cases. McCardle, who was in federal custody, sought habeas relief. While the case was pending before the Supreme Court in 1868, Congress enacted, over President Andrew Johnson's veto, a bill repealing the portion of the 1867 statute that conferred appellate jurisdiction on the Supreme Court over habeas proceedings. The McCardle court held that it had no jurisdiction because the 1867

12

conferral of appellate review power had been repealed by the 1868 enactment.

The McCardle court, however, was not confronted with a statute that foreclosed all review. The Court specifically noted that the full extent of its jurisdiction, as it stood before the 1867 statute, remained: "Counsel seem to have supposed, if effect be given to the repealing act in question, that the whole appellate power of the court, in cases of habeas corpus, is denied. But this is an error. . . . . [The 1868 repealer] does not affect the jurisdiction which was previously exercised." 74 U.S. (7 Wall.) at 515.

The Yerger decision, issued one year after McCardle, dealt with the same statute on similar facts, but in Yerger the Court addressed its power under the general grant of habeas jurisdiction in the 1789 Judiciary Act. Finding that the 1868 enactment did not repeal its review power under the prior general grant of jurisdiction, the Court stated:

> [T]here are no repealing words in the Act of 1867. If it repealed the Act of 1789, it did so by implication .. . .
>
> Repeals by implication are not favored. They are seldom admitted except on the ground of repugnancy; and never, we think, when the former Act can stand together with the new Act.

Ex Parte Yerger, 75 U.S. (8 Wall.) at 105.

Read together, McCardle, Yerger, and Felker establish the propositions that courts should not lightly presume that a congressional enactment containing general language effects a repeal of a jurisdictional statute, and, consequently, that only a plain statement of congressional intent to remove a particular statutory grant of jurisdiction will suffice. Informed by this precedent, we examine each of the 1996 statutory provisions that the government contends individually, or in totality, foreclose the District Court's habeas jurisdiction over Sandoval's deportation order.

a. AEDPA S 401(e)

AEDPA S 401(e), a non-codified provision, struck the text of former INA S 106(a)(10), a provision added by the

13

Immigration and Nationality Act of 1961, Pub. L. 87-301, S 5(a), 75 Stat. 651, and in its place inserted the language set forth in AEDPA S 440(a). Section 106(a)(10) had provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." The substituted language of AEDPA S 440(a) reads: "[a]ny final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in [the deportation provisions of the INA] shall not be subject to review by any court." The government urges that the 1961 Act significantly curtailed habeas jurisdiction in immigration matters, and that AEDPA S 401(e) eliminated such vestigial habeas jurisdiction as existed after the 1961 Act. We are not persuaded by either proposition.

In order to analyze this issue, we begin by reviewing some of the history of habeas corpus relief and judicial review in immigration cases. Although the specific reference to habeas jurisdiction in INA S 106(a)(10) was enacted as part of the 1961 Act, habeas jurisdiction over the Executive's detention of aliens has a considerably longer lineage. This jurisdiction was expressly recognized by the Supreme Court in United States v. Jung Ah Lung , 124 U.S. 621 (1888). A Chinese laborer, who had lost his certificate entitling him to reenter the United States and was being held in executive detention upon his return, successfully turned to the district court for a writ of habeas corpus. The government argued that under the Chinese Exclusion Acts, passed in the late nineteenth century, aliens excluded under the statute were not being deprived of liberty within the contemplation of the habeas statute. Id. at 626. The Court rejected this argument and also turned aside the government's argument that the federal courts' general statutory habeas power "was taken away by the Chinese Restriction Act, which regulated the entire subject matter, and was necessarily exclusive." Id. The Court stated that "[w]e see nothing in these Acts which in any manner affects the jurisdiction of the courts of the United States to issue a writ of habeas corpus." Id. at 627-28.

Subsequently, Congress, as part of the Immigration Act of 1891, sought to ensure the finality of executive branch

decisions regarding the exclusion of aliens by providing: "All decisions made by the inspection officers . . . touching the right of any alien to land, when adverse to such right, shall be final unless [appealed to the relevant executive officers]." Act of March 3, 1891, ch. 551, S 8, 26 Stat. 1084, 1085. In 1894, this provision was made applicable in Chinese Exclusion Act proceedings. Act of Aug. 18, 1894, ch. 301, 28 Stat. 372, 390. These finality provisions were apparently prompted by congressional dissatisfaction with judicial intervention in this area. See Gerald L. Neuman, Habeas Corpus, Executive Detention, and the Removal of Aliens, 98 Colum. L. Rev. 961, 1008 (1998).

When the Supreme Court addressed the 1891 statute in Nishimura Ekiu v. United States, 142 U.S. 651 (1892), it reaffirmed the availability of habeas to challenge immigration decisions notwithstanding the finality provision. The Court stated: "An alien immigrant, prevented from landing by any such officer claiming authority to do so under an act of Congress, and thereby restrained of his liberty, is doubtless entitled to a writ of habeas corpus to ascertain whether the restraint is lawful." Id. at 660. Hence, an alien's right to petition for a writ of habeas corpus to challenge the legal basis of his or her detention by the Executive Branch was firmly established in precedent more than a century ago.

The Immigration Act of 1917, ch. 29, S 19, 39 Stat. 874, 890 (repealed 1952), carried forward the provisions of the 1891 and 1894 Acts that made the decisions of the Attorney General on deportation "final." When the Administrative Procedure Act ("APA"), ch. 24, 60 Stat. 237 (codified at 5 U.S.C. S 500 et seq.), was enacted in 1946, it was unclear whether the "judicial review" of agency action that it provided extended to immigration cases. The Court answered that question in the negative in Heikkila v. Barber, 345 U.S. 229 (1953), concluding that the Immigration Act was "a statute precluding judicial review" within the meaning of the APA. Id. at 235. In so holding, the Court reviewed the period from 1891 (the year in which Congress passed the first in a series of statutes conferring finality on the Executive's immigration decisions) until 1952 (the year that Congress authorized APA review of

15

immigration decisions), and stated that the legislative regime in force during that period "clearly had the effect of precluding judicial intervention in deportation cases except insofar as it was required by the Constitution." Id. at 234-35. Significantly, the Court expressly concluded that habeas jurisdiction persisted even during this period, stating that in light of its decision that the APA did not enlarge the alien's rights, "he may attack a deportation order only by habeas corpus." Id. at 235.

Heikkila was decided under the Immigration Act of 1917, which was superseded by the Immigration and Nationality Act of 1952. The Supreme Court considered whether the APA applied to immigration cases under the 1952 Act in Shaughnessy v. Pedreiro, 349 U.S. 48 (1955). In particular, the Court focused on S 12 of the APA, which provided: "No subsequent legislation shall be held to supersede or modify the provisions of this Act except to the extent that such legislation shall do so expressly." 60 Stat. at 244 (codified as amended at 5 U.S.C. S 559). Noting that"[i]n the subsequent 1952 Immigration and Nationality Act there is no language which `expressly' supersedes or modifies the expanded right of review granted by S 10 of the Administrative Procedure Act," id. at 51, the Court held in Shaughnessy (1) that the APA applied to immigration cases and (2) that under the APA's "generous review provisions," id., the district court could review a deportation challenge under the Declaratory Judgment Act. The Court so held notwithstanding that the 1952 Act had carried over the provision of the 1917 Act that provided that the Attorney General's deportation and exclusion decisions shall be final. Hence, as a result of the Shaughnessy decision, aliens were free to seek APA judicial review both in the courts of appeals and in the district courts.

It is against this backdrop that Congress passed the Immigration and Nationality Act of 1961. Act of Sept. 26, 1961, Pub. L. No. 87-301, S 5, 75 Stat. 651. In that Act, Congress restructured judicial review, giving the courts of appeals "sole and exclusive" power to review deportation orders. The government relies on this language in contending that the 1961 Act curtailed habeas jurisdiction in immigration cases. However, the historical sequence

16

outlined above shows that this "sole and exclusive" language was addressed to the review provided under the APA, not to habeas jurisdiction. By locating APA review power in the courts of appeals, Congress sought to eliminate APA review by means of declaratory judgment actions in the district courts, a form of review that Shaughnessy had permitted. The "sole and exclusive" provision was not, as the government suggests, an effort to make APA review in the circuits work to the exclusion of habeas actions. See Foti v. INS, 375 U.S. 217, 231 (1963) ("[O]ur decision in this case [that the court of appeals has initial, exclusive jurisdiction to review denial of suspension of deportation] in no way impairs the preservation and availability of habeas corpus relief.").

That habeas jurisdiction was left intact by the 1961 Act is evidenced by the inclusion of S 106(a)(10), a new provision specifically providing that habeas jurisdiction was available for deportees. The legislative history makes clear that this provision was added out of concern that the "sole and exclusive" language might be read to deprive the courts of habeas jurisdiction, thereby creating a constitutional problem. The House Report states:

> The section clearly specifies that the right to habeas corpus is preserved to an alien in custody under a deportation order. In that fashion, it excepts habeas corpus from the language which elsewhere declares that the procedure prescribed for judicial review in circuit courts shall be exclusive. The section in no way disturbs the Habeas Corpus Act in respect to the courts which may issue writs of habeas corpus: aliens are not limited to courts of appeals in seeking habeas corpus.

H.R. Rep. No. 87-1086 at 29 (1961), reprinted in 1961 U.S.C.C.A.N. 2950, 2973.

Consequently, S 106(a)(10) as it existed under the 1961 Act cannot be said to have conferred habeas jurisdiction on the district courts. Such jurisdiction, recognized since the late nineteenth century, existed independently of the 1961 Act. This inclusion of a reference to habeas relief is best understood as congressional acknowledgment that the

17

district courts continued to have habeas jurisdiction even though APA review was channeled to the courts of appeals. The foregoing effectively refutes the government's contention that AEDPA's S 401(e) repeal of INAS 106(a)(10) eliminated the district courts' jurisdiction to review deportation orders in habeas corpus proceedings. And since AEDPA S 401(e) does not manifest an intent to repeal the original grant of habeas corpus jurisdiction, currently embodied in 28 U.S.C. S 2241, the elimination of INA's reference to habeas jurisdiction does not overcome the presumption against finding a repeal of habeas corpus by implication. Accord Goncalves, 144 F.3d at 121 ("It does not follow from the repeal of [INA S 106(a)(10)] that S 2241 habeas jurisdiction has been repealed altogether in immigration cases. Had Congress wished to eliminate any possible habeas jurisdiction under 28 U.S.C. S 2241, it could have easily inserted an explicit reference, but it did not."); Lee, 15 F. Supp. 2d at 39 (" `[T]he bark of [AEDPA S 401(e)] is worse than its bite. . . .[T]he section only eliminates the INA habeas provision without mention of S 2241.' ").

Our dissenting colleague places great importance on the fact that AEDPA S 401(e) was titled "Elimination of Custody Review by Habeas Corpus." However, as the Supreme Court has repeatedly noted, a title alone is not controlling. See Pennsylvania Dept. of Corrections v. Yeskey, 118 S.Ct. 1952, 1956 (1998) (" `[T]he title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase.' " (quoting Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 528-29 (1947)). There is no text in the AEDPA amendments referring to habeas corpus review.

b. AEDPA S 440(a) and IIRIRA S 309(c)(4)(G)

The government also relies for its jurisdictional challenge on Congress's declarations in AEDPA S 440(a) that deportation orders relating to aliens found to have committed the specified offenses "shall not be subject to review by any court," and in IIRIRA S 309(c)(4)(G), a transitional rule, that "there shall be no appeal permitted" in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense [covered in

18

the deportation provisions of the INA]." These statements, it contends, are express indications that Congress sought to preclude habeas jurisdiction. We disagree. Neither of these provisions specifically mentions jurisdiction under S 2241. Hence, under Felker and Yerger, we do not find a sufficiently clear statement of congressional intent to repeal the general grant of habeas jurisdiction.

This conclusion is bolstered by the fact that here, as was the case in Yerger, "the former Act can stand together with the new Act." 75 U.S. at 105. When viewed in light of the history of the Court's treatment of habeas jurisdiction in deportation cases, the references to "review" in the AEDPA provision and to "appeal" in the IIRIRA provision are properly understood as relating to judicial review under the APA. This is so because in the immigration context, the Court has historically drawn a sharp distinction between "judicial review"--meaning APA review--and the courts' power to entertain petitions for writs of habeas corpus.

As noted above, the Supreme Court in Heikkila  held that although the 1917 Immigration Act was a "statute precluding judicial review" within the contemplation of the APA, an alien could challenge his or her executive detention via habeas. 345 U.S. at 235. In doing so, the Court was clear that the "judicial review" precluded by the 1917 Acts did not include habeas corpus; the Court expressly rejected the conclusions of three courts of appeals that had"taken the position that habeas corpus itself represented judicial review." Id. at 235-36.

We can presume that Congress, in enacting AEDPA and IIRIRA, was cognizant of the Court's differentiation between "judicial review" on the one hand and writs of habeas corpus on the other. "It is always appropriate to assume that our elected representatives, like other citizens, know the law. . . . . [I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them." Cannon v. University of Chicago, 441 U.S. 677, 696-97, 699 (1979). Hence AEDPA S 440(a) and IIRIRA S 309(c)(4)(G) are most reasonably understood as foreclosing judicial review under

19

the APA, and not as relating to habeas jurisdiction under 28 U.S.C. S 2241.

c. IIRIRA S 306(a)'s amendment of INAS 242(g)

The government also urges that INA S 242(g), as amended by IIRIRA S 306(a), precludes the federal courts from hearing claims arising from removal proceedings unless they are brought in a petition for review. It argues that S 242(g) is an expression of congressional intent to channel all deportation review into the courts of appeals. Section 242(g) states:

> Exclusive Jurisdiction. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Chapter.

The principles enunciated in Felker and Yerger apply with equal force with respect to this provision. As there is no express reference to jurisdiction under 28 U.S.C.S 2241 in this provision, the rule disfavoring implied repeals requires us to conclude that jurisdiction under S 2241 is preserved under the amended INA S 242(g). Accord Goncalves, 144 F.3d at 122; Lee, 15 F. Supp. 2d at 39 ("[T]he `notwithstanding' provision [of the new S 242(g)] is simply insufficient in light of Felker for the Court to imply a repeal of S 2241.").

We are unpersuaded by the government's argument that the rule disfavoring repeals by implication does not apply here because the new INA S 242(g) sets up a comprehensive jurisdictional scheme which displaces, by virtue of its comprehensiveness, any other jurisdictional grant. In advancing this contention, the government cites as support the Supreme Court's decision in Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428 (1989). That case concerned an action filed by Amerada Hess against Argentina in federal court alleging that Argentina was responsible in tort for bombing Amerada Hess's ship without justification during the conflict over the Falkland Islands. Jurisdiction was predicated on the Alien Tort

20

Statute, 28 U.S.C. S 1350. Argentina moved to dismiss on the basis of immunity granted to foreign sovereigns under the Foreign Sovereign Immunities Act of 1976 (FSIA), Pub. L. No. 94-583, 90 Stat. 2891 (codified in scattered sections of 28 U.S.C.).

The Court of Appeals for the Second Circuit held that because the FSIA had not repealed the earlier Alien Tort Statute, the prior statute continued to provide a basis for jurisdiction. The Supreme Court reversed, concluding that the principle disfavoring repeals by implication had no applicability to the FSIA, as "Congress' decision to deal comprehensively with the subject of foreign sovereign immunity in the FSIA, and the express provision[granting foreign states immunity in federal and state courts except as provided in the FSIA], preclude a construction of the Alien Tort Statute" that would permit a suit against a foreign nation. 488 U.S. at 438.

We believe that Amerada Hess does not tilt the determination here in favor of the government's position. In reaching its holding, the Amerada Hess Court noted that its decision rested in part on the fact that the applicability of the Alien Tort Statute to suits against sovereign nations was uncertain from the outset. Id. at 436. Thus, the Court reasoned, "Congress's failure in the FSIA to enact an express pro tanto repealer of the Alien Tort Statute speaks only faintly, if at all, to the issue involved in this case. In light of the comprehensiveness of the statutory scheme in the FSIA, we doubt that even the most meticulous draftsman would have concluded that Congress also needed to amend pro tanto the Alien Tort Statute." Id. at 437.

Furthermore, in Amerada Hess the Court pointedly noted that the Court of Appeals had not cited "any decision in which a United States court exercised jurisdiction over a foreign state under the Alien Tort Statute." Id. at 436. In other words, there was no long history of exercising jurisdiction that would have been disturbed by its decision. In this case, by contrast, there is no lack of clarity about the historic existence of habeas jurisdiction.

Over a century's worth of precedent and practice unambiguously supports the conclusion that habeas

21

jurisdiction is available to aliens in executive custody. Chief Justice Marshall recognized the significance of the writ of habeas corpus in Ex Parte Bollman, 8 U.S. (4 Cranch) 75 (1807). In reference to section 14 of the Judiciary Act of 1789, the original predecessor of 28 U.S.C. S 2241, he stated:

> [T]his act was passed by the first Congress of the United States, sitting under a constitution which had declared `that the privilege of the writ of habeas corpus should not be suspended, unless when, in cases of rebellion or invasion, the public safety might require it.'

> Acting under the immediate influence of this injunction, they must have felt, with peculiar force, the obligation of providing efficient means by which this great constitutional privilege should receive life and activity; for if the means be not in existence, the privilege itself would be lost, although no law for its suspension should be enacted.

8 U.S. (4 Cranch) at 95.

Despite repeated congressional efforts since the late nineteenth century to confer finality on the immigration decisions of the Attorney General, the Court has consistently recognized the availability of habeas relief to aliens facing deportation. See Majority op. at 12-17 supra. In light of this precedent, nothing less than an express statement of congressional intent is required before a grant of habeas corpus jurisdiction as provided in 28 U.S.C. S 2241 will be found to have been repealed. We will not presume that this grant of jurisdiction is removed by general language such as that used in the new INAS 242(g). Accordingly, we apply the rule of Felker and Yerger. Because this provision is no more specific with respect to jurisdiction under S 2241 than any of the others canvassed in this opinion, we discern no express repealer of the district courts' jurisdiction under S 2241.

We note that this reading comports with our obligation to read statutes to avoid serious constitutional problems, such as those we would face were IIRIRA read to take away habeas jurisdiction as well as APA review. See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades

22

Council, 485 U.S. 568, 575 (1988); United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909) (court should interpret statute to avoid"grave and doubtful constitutional questions").

The Suspension Clause of the United States Constitution states: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, S 9, cl. 2. In Swain v. Pressley, 430 U.S. 372 (1977), the Court considered an amendment to the District of Columbia Code by which Congress divested the district courts of habeas jurisdiction and substituted a collateral proceeding in that District's Superior Court, patterned after 28 U.S.C. S 2255. The Court held that the legislation did not violate the Suspension Clause because "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." 430 U.S. at 381. A statute removing all review of executive detention, however, would not provide an adequate and effective collateral remedy.

Recognizing that its interpretation might lead to just such a constitutional dilemma, the government contends that under the 1996 amendments there is jurisdiction in the courts of appeals to entertain claims of "substantial constitutional error" by aliens in Sandoval's position. This argument must fail because of the absence of any support, either in the statute or in the legislative history. The government's briefs cite no provision of AEDPA or IIRIRA that supports its reading and it conceded at oral argument that there is no specific provision granting us jurisdiction over substantial constitutional claims. Although the government's argument would have more force if there were a constitutional imperative to read the 1996 statutes in that manner, our conclusion that the statutes have left habeas jurisdiction intact in the district courts removes any such imperative.

In sum, because neither AEDPA nor IIRIRA contains a clear statement that Congress sought to eliminate habeas jurisdiction under 28 U.S.C. S 2241, we conclude that S 2241 survives the 1996 amendments.

4. Scope of Review Under Habeas Jurisdiction

The jurisdictional holdings of the courts in Richardson and LaGuerre relieved them of any consideration of the scope of review under habeas corpus. Because the courts in Goncalves, Henderson, Magana-Pizano , and Lee sustained habeas jurisdiction under S 2241, they reached that issue and held that S 2241 jurisdiction covered not only constitutional claims but also the aliens' statutory claim that the Attorney General had S 212(c) to apply to pending cases.

Inasmuch as the language of the habeas corpus statute encompasses claims that one "is in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. S 2241(c)(3), we agree that Sandoval's statutory claim is cognizable in a habeas corpus proceeding. 5 Furthermore, the Supreme Court has repeatedly recognized that aliens may press statutory claims in habeas proceedings, even during the period when, according to the Heikkila Court, 345 U.S. at 234-35, judicial review in the immigration context was reduced to the minimum required by the Constitution. See, e.g., United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265 (1954) ("The crucial question is whether the alleged conduct of the Attorney General deprived petitioner of any of the rights guaranteed him by the statute or by the regulations issued pursuant thereto."); Gegiow v. Uhl, 239 U.S. 3, 9 (1915) ("The courts are not forbidden by the statute to consider whether the reasons, when they are given, agree with the requirements of the act. The statute, by enumerating the conditions upon which the allowance to land may be denied, prohibits the denial in other cases. And when the record shows that a commissioner of immigration is exceeding his power, the alien may demand his release upon habeas corpus.").

We therefore agree with the legal conclusion reached by the District Court here that it had jurisdiction, in a habeas proceeding, to consider the statutory claim raised by

_____

5. This does not mean that a district court reviewing a deportation claim in a habeas proceeding necessarily has the same jurisdiction that a court of appeals previously had under a Petition for Review, an issue we leave for future decision.

24

Sandoval. Accord Henderson, 157 F.3d at 122 (Statutory claims "affecting the substantial rights of aliens of the sort the courts have secularly enforced" are reviewable on habeas); Goncalves, 144 F.3d at 124-25 ("The pure statutory claims Goncalves makes here are well within precedent interpreting the core habeas protection provided by S 2241."); Lee, 15 F. Supp. 2d at 42 ("[P]recedent and reason fully persuade me that the Constitution contemplates that courts inquiring into the legitimacy of executive detention on habeas must be available to hear claims of statutory as well as constitutional wrong.").

5. The Pending Petition for Review

Also pending before us is Sandoval's Petition for Review from the Board of Immigration Appeals, No. 98-3214, which we consolidated with the government's appeal from the District Court's grant of relief to Sandoval under its habeas corpus jurisdiction. The government argues that we lack subject matter jurisdiction to entertain Sandoval's Petition for Review, and cites in support our recent decision in Morel, holding that AEDPA S 440(a) "removes from us jurisdiction to review a claim of legal error in deportation proceedings." 144 F.3d at 251. Sandoval recognizes that a decision by this court that the District Court had jurisdiction under habeas corpus to review his claim would obviate the need for us to consider his Petition for Review. In light of our conclusion that the District Court had such jurisdiction, and in light of our decision in Morel, we will dismiss the Petition for Review.6

_____

6. Because of our conclusion that jurisdiction under 28 U.S.C. S 2241 covers statutory, as well as constitutional claims, we need not decide whether the claimed existence of jurisdiction in the courts of appeals to review substantial constitutional claims, but not statutory claims, would be an adequate alternative.

B.

Applicability of the AEDPA Amendment to
INA S 212(c) to Sandoval

Having determined that the District Court properly
exercised habeas jurisdiction, we turn to consider the
government's argument that the District Court erred in
holding that AEDPA S 440(d) does not apply to deprive
Sandoval of the opportunity to seek discretionary relief
under INA S 212(c). Prior to AEDPA, INA S 212(c) permitted
deportable aliens, other than those who had committed
specified crimes (such as aggravated felonies and crimes of
moral turpitude), to apply to the Attorney General for a
waiver of deportation. AEDPA S 440(d) added drug offenses
to the list of deportable offenses that made aliens ineligible
for discretionary relief.7 The provision precluding
discretionary relief for those convicted of drug offenses was
not in effect at the time Sandoval sought to petition under
INA S 212(c). The IJ denied Sandoval on the ground that he

_____

7. AEDPA S 440(d) amends 8 U.S.C. S 1182(c). As amended, the statute
reads in full:

> Aliens lawfully admitted for permanent residence who temporarily
> proceeded abroad voluntarily and not under an order of deportation,
> and who are returning to a lawful unrelinquished domicile of seven
> consecutive years, may be admitted in the discretion of the
Attorney
> General without regard to the provisions of subsection (a) of this
> section (other than paragraphs (3) and (9)(C)). Nothing contained
in
> this subsection shall limit the authority of the Attorney General
to
> exercise the discretion in him under section 1181(b) of this title.
> This subsection shall not apply to an alien who is deportable by
> reason of having committed any criminal offense covered in section
> 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by
section
> 241(a)(2)(A)(ii) for which both predicate offenses are covered by
> section 241(a)(2)(A)(I).

See AEDPA S 440(d). Section 1182(c) was repealed by IIRIRA with respect
to cases in which the INS instituted removal proceedings on or after
April 1, 1997. See IIRIRA S 309. Because the INA initiated removal
proceedings against Sandoval before April 1, 1997, the repeal of
S 1182(c) does not apply here.

did not possess the requisite seven years lawful residence. Sandoval appealed to the BIA.

Before the BIA rendered its decision on Sandoval's appeal, the Attorney General issued her decision in Matter of Soriano, Interim Decision 3289 (A.G. Feb. 21, 1997), in which she ruled that AEDPA S 440(d) applies to pending cases. The BIA, relying on Soriano, dismissed Sandoval's appeal on the ground that AEDPA S 440(d) made him ineligible for discretionary relief. The District Court disagreed, after analyzing the retroactivity decisions in Landgraf v. USI Film Prods., 511 U.S. 244 (1994); Lindh v. Murphy, 117 S.Ct. 2059 (1997); and United States v. Skandier, 125 F.3d 1788 (3d Cir. 1997). Therefore, the court entered an injunction staying Sandoval's deportation and ordered the INS to consider Sandoval's application for relief on its merits.

The government urges that the District Court erred in finding that AEDPA S 440(d) does not apply to Sandoval. The government contends that the Attorney General's decision in Soriano is correct, and that her decision is entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Sandoval argues that the Supreme Court's decision in Landgraf, understood in light of the intervening decision in Lindh, compels the conclusion that S 440(d) is not to be applied to cases pending on the date of enactment.

As a threshold matter, we note that we are doubtful about the appropriateness of Chevron deference in this setting. Under Chevron, we are required, in the absence of a direct expression of congressional intent on an issue, to defer to an agency's reasonable interpretation of its governing statute. 467 U.S. at 843. But Chevron appears to speak to statutory interpretation in those instances where Congress delegated rule-making power to an agency and thereby sought to rely on agency expertise in the formulation of substantive policy. See id. at 865. An issue concerning a statute's effective date is not one that implicates agency expertise in a meaningful way, and does not, therefore, appear to require Chevron deference. See Goncalves, 144 F.3d at 127. Rather, the question of a statute's effective date appears to present "a pure question

27

of statutory construction for the courts to decide." INS v. Cardoza-Fonseca, 480 U.S. 421, 446 (1987).

We need not decide, however, whether Chevron deference applies. Assuming arguendo that Chevron does apply, it directs us to ascertain, by "employing traditional tools of statutory construction," whether Congress has expressed "an intention on the precise question at issue." 467 U.S. at 843 n.9. By following that direction, we conclude that AEDPA does contain an expression of congressional intent and that Congress's intent was that the AEDPA amendment to S 212(c) was not to be applied to pending cases.

In Landgraf, the Court set forth the now-familiar principles for determining the temporal reach of a statute:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at 280. Thus, Landgraf contemplates a two-step inquiry: First, a determination, using the ordinary tools of statutory construction, whether Congress prescribed the temporal compass of the statute, and, if not, second, a determination whether application would have a "retroactive effect."

The Court elaborated upon Landgraf in Lindh, where the Court was called upon to determine the temporal reach of another AEDPA provision--one that heightens the standards for granting S 2254 habeas relief in noncapital cases. The Lindh Court, speaking through Justice Souter, emphasized early in the opinion that "in determining a

28

statute's temporal reach generally, our normal rules of construction apply." 117 S.Ct. at 2063. It noted that AEDPA set up one set of rules for noncapital cases—for which Congress provided no effective date—and another for capital cases—for which Congress made express provision, i.e., the rules would apply to pending cases. Accordingly, the Court held that Congress had, by negative implication, expressed its intent that the rules pertaining to noncapital cases apply only prospectively, stating that "[n]othing, indeed, but a different intent explains the different treatment." Id. at 2064. In so holding, the Lindh Court made clear that the rule of negative implication is part of the normal rules of statutory construction. Lindh amplified the first step of the Landgraf analysis, making clear that if the statutory construction inquiry yields the answer that Congress intended prospectivity, the inquiry ends and the court need not engage in an analysis of whether there would be a "retroactive effect." Id.; see also Mathews v. Kidder Peabody, No. 97-3164 (3d Cir. 1998) (noting that Lindh "essentially add[s] a step" to the Landgraf inquiry).

When the Attorney General considered the applicability of AEDPA S 440(d) to pending cases in Soriano , she found that it did not contain an express directive, and then proceeded to consider whether its application to pending cases would have an impermissibly retroactive effect. Applying this second step in the Landgraf analysis, she concluded that AEDPA S 440(d) would not have such an effect. In urging the correctness of this decision, the government relies, as did the Attorney General, on our decision in Scheidemann v. INS, 83 F.3d 1517 (3d Cir. 1996). However, both Soriano and Scheidemann were issued without the benefit of the Lindh court's elaboration of Landgraf principles.

The issue in Scheidemann was whether a 1990 amendment to INA S 212(c)—one that made "aggravated felonies" a disqualification for discretionary relief—was intended to encompass pre-enactment convictions. In examining the text of the relevant statutory provisions in their context, we concluded that the "design of the [statute] clearly demonstrated that Congress intended the temporally-unrestricted definition of `aggravated felony' to apply to pre-enactment convictions." Id. at 1524. We stated

29

that this interpretation was the only "sensible" one, and that a contrary interpretation would have rendered a congressional provision "absurd." Id. at 1526.

That issue was different than the one before us now under a different statute. Even in Scheidemann , where we held the 1990 amendment applicable to pre-enactment conduct, we specified that such construction was applicable only to aliens who applied for discretionary relief after the effective date of the 1990 amendment. See id.  at 1526 & n.12.

We thus apply the analysis instructed by Lindh , which was unavailable both in Scheidemann and in Soriano. Section 440(d) bears no effective date, although it does provide that pre-enactment offenses should be considered. However, several other comparable provisions do have express effective dates. For example, AEDPA S 413, entitled "Denial of Other Relief for Alien Terrorists," (like AEDPA S 440(a)) makes relief that was previously available at the agency's discretion unavailable to aliens fitting a particular description, that of an "alien terrorist." Significantly, S 413 (unlike S 440(d)) includes a provision making it effective with respect to "applications filed before, on or after [the date of enactment] if final action has not been taken on them before such date." AEDPA S 413(g). This difference in treatment between "alien terrorists" underS 413 and aliens convicted of the referenced crimes under S 440(d) leads to the negative implication that Congress intended the AEDPA amendments to apply in pending cases with respect to the former group of aliens but not the latter. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Cardoza–Fonseca, 480 U.S. at 432 (alteration in original) (internal quotation marks omitted).

The legislative history of the revision to S 212(c) lends firm support to this reading of the statute. See id. at 432 (using legislative history to confirm textual reading of statute). The Senate version of the bill had within it language expressly making the amended INA S 212(c) applicable to pending cases, while the comparable section

30

of the House version did not. Compare S. 735, 104th Cong. S 303(f) (1995), with H.R. 2703, 104th Cong. S 662 (1996). The final bill that emerged from the conference committee dropped the language from the Senate bill that would have made the amendment to S 212(c) applicable in pending proceedings, but retained the language from the House bill that made the amendments with respect to alien terrorists applicable to pending cases. See H.R. Rep. No. 104–518, at 119 (1996), reprinted in 1996 U.S.C.C.A.N. 944, 952; see also Gonclaves, 144 F.3d at 131–32 (exhaustively canvassing the legislative history). This legislative history confirms that Congress deliberately chose to make AEDPA S 440(d) apply prospectively. As the Court noted in Cardoza–Fonseca, "Few principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language." 480 U.S. at 442–43 (internal quotation marks omitted).

Thus, according to the Lindh Court's explication of Landgraf, we can discern by negative implication that AEDPA S 440(d) was not intended to apply to cases pending on the date of enactment. Commenting on a similar issue of statutory construction, the Supreme Court had previously directed that, "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, 467 U.S. at 843 n. 9. Because the Lindh court has made clear that the rule of negative implication is part of the normal rules of construction, the Chevron instruction is satisfied as well.

In sum, we conclude that Congress did indeed express an intent that AEDPA's amendment to INA S 212(c) should not apply to cases pending on the date of enactment, and so hold. Accord Henderson, 157 F.3d at 129–30; Goncalves, 144 F.3d at 128–31. Therefore, we need not reach the question whether AEDPA S 440(d) violates the Equal Protection Clause. Consequently, we conclude that the District Court did not err in directing the agency to decide the merits of Sandoval's claim for discretionary relief.

31

IV.

CONCLUSION

For the foregoing reasons, in Nos. 98-1099 and 98-1547
we will affirm the decision of the District Court and in No.
98-3214 we will dismiss the Petition for Review.

32

ALITO, Circuit Judge, concurring in part and dissenting in part:

I agree with LaGuerre v. Reno, 1998 WL 912107, at 1-2 (7th Cir. 1998), that Congress has eliminated the district courts' jurisdiction to entertain habeas petitions such as the one at issue here. Before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, Section 106(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. S 1105a (a), provided that a petition for review filed in a court of appeals was, with a few specified exceptions, "the sole and exclusive procedure for . . . the judicial review of all final orders of deportation." One of the specified exceptions provided that "any alien held in custody pursuant to an order of deportation [could] obtain judicial review thereof by habeas corpus proceedings." Section 106 (a)(10) of the INA, 8 U.S.C. S 1105a(a)(10).

AEDPA changed this scheme. Section 401(e) of AEDPA, entitled "ELIMINATION OF CUSTODY REVIEW BY HABEAS CORPUS," struck former subsection (10). Section 440(a) of AEDPA substituted the following language for the former text of that subsection:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2) (A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject to review by any court.

In my view, the text of Section 106(a) as amended by AEDPA precluded the type of habeas proceeding that is now before us. After AEDPA, the introductory portion of Section 106(a) still provided that a petition for review by a court of appeals was "the sole and exclusive procedure for. . . the judicial review of all final orders of deportation"; the exception previously set out in subsection (10), which permitted an alien held in custody pursuant to an order of deportation to obtain "judicial review" of that order by means of a habeas corpus proceeding, had been pointedly repealed in a statutory section labeled "ELIMINATION OF

33

CUSTODY REVIEW BY HABEAS CORPUS"; and in the place of this previous exception, there was inserted language stating that such deportation orders "shall not be subject to review by any court." These provisions are clear-- they eliminated habeas jurisdiction -- and it is therefore unnecessary to consider the effect of related provisions of the subsequently enacted Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), for whatever effect these provisions had, they most certainly did not restore the district courts' jurisdiction to entertain the type of habeas petition that is at issue.

In concluding that AEDPA did not touch the district courts' habeas jurisdiction, the majority invokes the principle that repeals of habeas jurisdiction should not be presumed. See Felker v. Turpin, 518 U.S. 651, 658-60 (1996). The majority then reasons that the amendment of Section 106(a)(10) did not affect the district courts' habeas jurisdiction under a separate statutory provision, 28 U.S.C. S 2241. This interpretation, however, presents numerous problems. First, it ignores the plain meaning of INA Section 106(a), which, after AEDPA, stated that -- with a few, specified and non-pertinent exceptions -- a petition for review by a court of appeals was "the sole and exclusive procedure for . . . judicial review of all final orders of deportation." Second, the majority's interpretation ignores the heading of Section 401(e) of AEDPA, viz., "ELIMINATION OF CUSTODY REVIEW BY HABEAS CORPUS." Third, the majority's interpretation ignores the clear meaning of the new text that was placed in Section 106(a)(10), which stated unequivocally that final orders of deportation such as the one at issue here "shall not be subject to review by any court." Fourth, the majority's interpretation has the perverse effect of lengthening the process of judicial review of deportation orders based on the commission of a criminal offense.

The majority's analysis is not supported by Felker, which concerned the meaning of 28 U.S.C. S 2244(b)(3)(E). This provision, which states that a court of appeals order granting or denying authorization to file a second or successive habeas application is not subject to review by

34

means of a petition for rehearing or certiorari, does not state that the Supreme Court cannot review such an order in an original habeas proceeding, and the Court refused to conclude that S 2241(b)(3)(E) implicitly effected that result. Here, by contrast, Section 106(a) of the INA, as amended by AEDPA, expressly precluded a district court from exercising habeas jurisdiction under the circumstances present here. Accordingly, in No. 98-1099, I would reverse the judgment of the District Court and remand with instructions to dismiss. This result does not implicate the Suspension Clause because any judicial review to which Sandoval is constitutionally entitled can and should be provided by means of a petition for review filed in our court.

Such a petition is before us in No. 98-3214. However, in Morel v. INS, 144 F.3d 248 (3d Cir. 1998), another panel of our court, while recognizing that an alien subject to an order of deportation is entitled to "Article III review of claims of `substantial Constitutional error,' " held that such an alien is not constitutionally entitled to review of a non-constitutional claim. Id. at 251. If Morel too narrowly construed the scope of the review to which a petitioner like Sandoval is constitutionally entitled, Morel should be overruled. The problem should not be compounded by authorizing the district courts to exercise a type of habeas jurisdiction that Congress curtailed. For present purposes, however, since Morel is binding on this panel, I agree with the majority that we must dismiss the petition insofar as it asserts non-constitutional claims. I add that, if we were free to reach the merits, I would follow the Seventh Circuit's analysis in LaGuerre. I would also deny the petition insofar as it asserts an equal protection claim. See LaGuerre, 1998 WL 912107 at 4-5.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

35