**UNITED STATES, Plaintiff,**

v.

**Javiela DIAZ–NIN, Defendant.**

**No. CR.2000–746.**

District Court, Virgin Islands, D. St. Thomas.

Feb. 21, 2002.

---

Nelson Jones, Assistant U.S. Attorney, St. Thomas, VI, for the plaintiff.

Douglas Beevers, Assistant Federal Public Defender, St. Thomas, VI, for defendant.

## MEMORANDUM

MOORE, District Judge.

This matter came before the Court on November 21, 2001, for argument on Javiela Diaz–Nin's ["Diaz–Nin"] motion to suppress a deportation order. Diaz–Nin is charged with illegal reentry into the United States after having been deported, in violation of 8 U.S.C. § 1326. Before the Court was whether the application of the 1996 amendments to the immigration laws under the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, as applied to Diaz–Nin, rendered her 1997 deportation

proceeding fundamentally unfair. For the following reasons, as well as those given from the bench, this Court granted her motion to suppress the deportation order.

## I. FACTUAL SUMMARY

Diaz–Nin, a citizen of the Dominican Republic, is charged by information with reentering the United States after previously having been deported, in violation of 8 U.S.C. § 1326(a) and (b)(2). Diaz–Nin originally entered the United States illegally sometime in the 1980s. On October 27, 1988, pursuant to the amnesty program of the Immigration Reform and Control Act of 1986 ["IRCA"], § 201(a)(1), 8 U.S.C. § 1255a, she applied for temporary residence as an agriculture worker. On November 16, 1989, the Immigration and Naturalization Service ["INS"] approved her application for temporary resident status. Her status was then adjusted on December 1, 1990, to an alien "lawfully admitted for permanent residence," pursuant to 8 U.S.C. § 1255a(b)(1).

On April 12, 1995, Diaz–Nin pled guilty to possession of cocaine in violation of Massachusetts state law. On August 7, 1996, the INS issued an Order to Show Cause, informing Diaz–Nin that, due to her conviction, she was subject to deportation. An immigration judge ["IJ"] determined that Diaz–Nin was deportable, and Diaz–Nin appealed the IJ's decision to the Board of Immigration Appeals ["BIA"], seeking a waiver of deportation under section 212(c) of the Immigration and Nationality Act, ["INA"], 8 U.S.C. § 1182(c) (repealed 1996). On October 23, 1997, the BIA dismissed Diaz–Nin's appeal, finding that, in light of amendments to the INA made by the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"], Pub.L. No. 104–132, 110 Stat. 1214 (codified in scattered sections of 8 U.S.C.), she was not eligible for section 212(c) relief. Diaz–Nin was deported sometime thereafter.

On December 2, 2000, Diaz–Nin reentered the United States. She was arrested, and is charged with illegal reentry after deportation, in violation of 8 U.S.C. § 1326. Diaz–Nin filed a motion to dismiss the deportation order on the grounds that it was unlawfully executed and that the government, therefore, should be precluded from using it against her in this criminal proceeding.

## II. DISCUSSION

Diaz–Nin argued that the 1997 deportation order was unlawful because the BIA (1) misapplied the AEDPA by denying her relief under section 212(c) and (2) failed to inform her of her right to seek a writ of habeas corpus, effectively denying her judicial review of the deportation order. Diaz–Nin maintained, thus, that she did not knowingly and intelligently waive her right to habeas relief. Because the deportation proceeding was not subject to judicial review, Diaz–Nin averred that the Government should be prohibited from using it against her.

█ Federal immigration law forbids any alien who has been deported from the United States from reentering or being found in the United States without prior approval from the Attorney General. 8 U.S.C. § 1326(a). Among the elements of a *prima facie* case in an illegal reentry prosecution, the government bears the burden of proving beyond a reasonable doubt that a defendant was deported. Although the government need not show that the deportation was lawful, the defendant in a subsequent criminal prosecution may collaterally attack the underlying deportation if she effectively was denied judicial review of the administrative proceedings. *See United States v. Mendoza–Lopez*, 481 U.S. 828, 838–39, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). The Supreme Court, in *Mendoza–Lopez*, held that a defendant

charged with reentry after deportation, in violation of 8 U.S.C. § 1326, could challenge the validity of the underlying deportation order in the criminal proceeding. *Id.* The Court held that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding." *Id.* at 837–38, 107 S.Ct. 2148 (emphasis in original). Accordingly, the Court held that "[d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id.* at 839, 107 S.Ct. 2148.

In light of *Mendoza–Lopez,* Congress subsequently amended section 1326 to provide that a defendant in a criminal proceeding may challenge the validity of the deportation order if the alien demonstrates that (1) she exhausted any administrative remedies that may have been available to seek relief against the order, (2) the deportation proceedings at which the order was issued improperly deprived her of the opportunity for judicial review, and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d)(1)-(3).

### A) Whether Diaz–Nin exhausted available administrative remedies

■ The first hurdle Diaz–Nin had to overcome in challenging the admissibility of her deportation order was to establish that she exhausted "any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). "An appeal from an IJ to the BIA, without more, generally suffices

to satisfy an exhaustion requirement." *United States v. Gonzalez–Roque,* 165 F.Supp.2d 577, 582 (S.D.N.Y.2001) (quoting *United States v. Johnson,* 2000 WL 620324 *7, 2000 U.S. Dist. LEXIS 6633 at *25 (D.Conn. May 1, 2000)). The record indicates that Diaz–Nin attempted to appeal the IJ's order and that, on October 23, 1997, the BIA dismissed her appeal. I concluded, thus, that Diaz–Nin established the first step in seeking to exclude her deportation order. *See Scheidemann v. INS,* 83 F.3d 1517, 1519 (3d Cir.1996) (noting that alien who had appealed his deportation order to the BIA had "exhausted his administrative remedies as of right").

### B) Whether Diaz–Nin was improperly deprived of the opportunity for judicial review

■ Section 1326(d) also requires that Diaz–Nin show that the deportation proceedings improperly deprived her of the opportunity for judicial review. 8 U.S.C. § 1326(d)(2). Diaz–Nin argued that the deportation order was inadmissible because she was not informed of her right to appeal the BIA's decision.

Diaz–Nin was granted permanent resident status on December 1, 1990. On April 12, 1995, she pled guilty to possession of cocaine in violation of Massachusetts state law. Her conviction rendered her deportable under section 241(a)(2)(A)(iii) and (a)(2)(B)(i) of the INA, 8 U.S.C. § 1251(a)(2)(A)(iii) and (a)(2)(B)(i).[1] Consequently, on August 7, 1996, the INS initiated deportation proceedings against Diaz–Nin and issued a show cause order requiring her to establish why she was not deportable.

In 1996, Congress passed two bills that drastically altered the immigration laws:

---

**1.** These sections were redesignated in 1996 as INA § 237(a)(2)(A)(iii) and (a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(A)(iii) and (a)(2)(B)(i).

the AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ["IIRIRA"], Pub.L. No. 104–208, 110 Stat. 3009–546 (codified in scattered sections of 8 U.S.C.). At the time that Diaz–Nin pled guilty to possession of cocaine, judicial review of deportation orders ordinarily proceeded in the courts of appeals. *See* INA § 106(a)(2), 8 U.S.C. § 1105a(a)(2) (repealed 1996). In addition, aliens seeking relief from deportation could seek federal habeas relief under 28 U.S.C. § 2241. *Id.* § 106(a)(10), 8 U.S.C. 1105a(a)(10) (repealed 1996).

After Diaz–Nin pled guilty, but before the INS began deportation proceedings against her, the AEDPA was signed into law on April 24, 1996, and amended these provisions. The INS initiated deportation proceedings against her on August 7, 1996. The next month, on September 30, 1996, Congress enacted IIRIRA and established two different sets of rules. The "transitional" rules, which took effect October 30, 1996, applied to Diaz–Nin and other aliens under removal proceedings before April 1, 1997. The "permanent" rules did not become effective until April 1, 1997. IIRIRA § 309(a), 110 Stat. at 3625 (permanent rules); *id.* § 309(c), 110 Stat. at 3625 (transitional rules); *see also Sandoval v. Reno*, 166 F.3d 225, 229 (3d Cir.1999). One of the transitional rules provides, in relevant part, that

> [t]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act).

IIRIRA § 309(c)(4)(G), 110 Stat. at 3626–27.[2] This rule applied to Diaz–Nin because her exclusion proceedings were started before April 1, 1997, and the BIA dismissed her appeal after October 30, 1996. Accordingly, Diaz–Nin was precluded from seeking judicial review of her deportation order.

In addition, at the time the BIA dismissed Diaz–Nin's appeal from the IJ's order, the law was unclear whether an alien in her position could seek habeas relief under 28 U.S.C. § 2241.[3] *See Sandoval*, 166 F.3d at 230 (discussing split among the circuit courts on this issue). Just last year, four years after Diaz–Nin's deportation hearing, the Supreme Court resolved the issue. *See INS v. St. Cyr*, 533 U.S. 289, 370, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). In *St. Cyr*, the Court held that the district courts retained jurisdiction under 28 U.S.C. § 2241 to consider habeas claims from aliens ordered deported. *Id.* Given the confusion of the law at the time that Diaz–Nin was ordered deported and the INS's position that both judicial review and habeas relief were no longer available, I found that it would have been futile for Diaz–Nin to have sought relief in the courts and that, effectively, she was denied judicial review of any kind. *See Gonzalez–Roque*, 165 F.Supp.2d at 584 (noting that "[u]ntil the Supreme Court's recent rulings, it was not clear even to

---

**2.** The transitional rules are neither part of the INA nor codified in the United States Code. *Sandoval*, 166 F.3d at 229 n. 3.

**3.** The Court of Appeals for the First Circuit, the circuit in which Diaz–Nin was ordered deported, did not resolve the issue until 1998, after Diaz–Nin had been deported. *See Goncalves v. Reno*, 144 F.3d 110, 134 (1st Cir. 1998) (holding that, after AEDPA and IIRIRA

amendments, district courts retained jurisdiction to consider section 2241 habeas petitions filed by aliens seeking relief from deportation), *cert. denied*, 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). The following year, the Court of Appeals in this circuit determined that an alien's ability to seek federal habeas relief under section 2241 survived the 1996 laws. *See Sandoval*, 166 F.3d at 238.

skilled lawyers that [aliens ordered deported] had a right to file a writ of habeas corpus"). Accordingly, I determined that she met section 1326(d)'s second requirement that she was denied judicial review.

### C) Whether Diaz–Nin's deportation hearing was fundamentally unfair (was she prejudiced?)

Finally, Diaz–Nin had to establish that her immigration proceedings were fundamentally unfair and that she was prejudiced by the unfairness. Diaz–Nin averred that her deportation was unlawful because the BIA improperly dismissed her appeal based on a retroactive application of the AEDPA. In addition, she claimed that she was prejudiced because she stood a good chance of being granted relief from deportation under section 212(c) of the INA but for the BIA's erroneous dismissal of her appeal.

#### 1. Whether the BIA's dismissal of Diaz–Nin's appeal was fundamentally unfair

In 1995, when Diaz–Nin pled guilty to possession of cocaine, aliens who were ordered deported by the INS could apply to the Attorney General for a waiver of deportation under section 212(c) of the INA. At that time, section 212(c) read in relevant part:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

8 U.S.C. § 1182(c) (repealed 1996). Although this provision, on its face, was applicable to only exclusion proceedings, a longstanding interpretation of that section extended the Attorney General's discretion to otherwise deportable aliens.[4] *See St. Cyr*, 533 U.S. at 358, 121 S.Ct. 2271 (citing *Matter of Silva*, 16 I. & N. Dec. 26, 30 (1976)).

In April 1996, after Diaz–Nin had pled guilty, section 440(d) of the AEDPA added drug offenses to the list of deportable offenses that made aliens ineligible for relief under section 212(c).[5] Before the BIA ruled on Diaz–Nin's appeal of the IJ's decision ordering her deported, the Attorney General decided to apply the amended section 440(d) to already-pending cases. *See Sandoval*, 166 F.3d at 239. Applying the new section 440(d), the BIA found Diaz–Nin to be ineligible for section 212(c) discretionary relief and dismissed her appeal.

 In *St. Cyr*, the Supreme Court rejected the Attorney General's retroactive

4. Before 1996, federal immigration laws distinguished two categories of aliens who were unable to remain in the United States. Aliens who sought admission into the United States but were determined to be inadmissible were "excludable" and faced "exlusion" proceedings. 8 U.S.C. § 1182 (repealed 1996). Those aliens who were already admitted into the United States but were determined to be "deportable" faced "deportation" proceedings. 8 U.S.C. § 1251 (redesignated by IIRIRA as 8 U.S.C. § 1227(a)(2)(B)(i)). IIRIRA abolished "exclusion" and "deportation" proceedings and replaced them with "removal" proceedings applicable to both "inadmissible" and "deportable" aliens. IIRIRA § 309(a), 8

U.S.C. §§ 1229, 1229a. Under IIRIRA, aliens facing removal proceedings may seek "cancellation of removal" relief under INA § 240A, 8 U.S.C. § 1229b.

5. Section 440(d) of the AEDPA amended 8 U.S.C. § 1182(c), barring relief to aliens convicted of drug offenses. In April 1997, IIRIRA repealed section 1182(c) altogether with respect to cases in which the INS instituted removal proceedings on or after April 1, 1997. *See Sandoval*, 166 F.3d at 239. Because the INS initiated removal proceedings against Diaz–Nin before April 1, 1997, the repeal of 8 U.S.C. § 1182(c) is not relevant here.

application of section 440(d) of the AEDPA to aliens against whom the INS had initiated deportation proceedings before the law's enactment. The Court concluded that, where aliens had pled guilty to aggravated felonies while section 212(c) relief was still statutorily available to them, the Attorney General's denial of section 212(c) relief to those aliens was an improper application of section 440(d) of the AEDPA. *St. Cyr*, 533 U.S. at 290, 121 S.Ct. 2271. The Court held that section 212(c) relief remained available to aliens "whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for [section] 212(c) relief at the time of their plea under the law then in effect." *Id.* Because the BIA dismissed Diaz–Nin's appeal based on an erroneous retroactive application of the 1996 laws, I determined that her deportation proceeding was fundamentally unfair.

### 2. Whether Diaz–Nin was prejudiced by the BIA's dismissal of her appeal seeking relief under section 212(c)

At the time Diaz–Nin pled guilty, section 212(c) of the INA provided that an alien could seek a waiver of deportation if she could show that she had established a "lawful unrelinquished domicile of seven consecutive years." 8 U.S.C. § 1182(c)(repealed 1996). On October 27, 1988, Diaz–Nin applied for temporary resident status as an agriculture worker under the amnesty program, 8 U.S.C. § 1255a. She was granted temporary resident status on November 16, 1989. Then, on December 1, 1990, her status was adjusted to an alien "lawfully admitted for permanent residence." The INS issued an order requiring Diaz–Nin to show why she was not deportable on August 7, 1996. An IJ determined that Diaz–Nin was deportable, and she appealed this decision.[6] The BIA dismissed her appeal on October 23, 1997.

The INA does not define section 212(c)'s use of the term "lawful domicile." The Court of Appeals for the Third Circuit has interpreted the provision as requiring an intent to remain in the country. *Graham v. INS*, 998 F.2d 194, 196 (3d Cir. 1993) (holding that alien could not count towards section 212(c)'s domicile requirement time spent under a temporary worker visa because the visa required that he have "a residence in a foreign country which he has no intention of abandoning"). The amnesty program under which Diaz–Nin was granted temporary resident status, 8 U.S.C. § 1255a, requires that a "temporary resident" who wants to adjust to "permanent resident" status must intend to remain in the United States while in temporary status.[7] *See Ortega de Robles v. INS*, 58 F.3d 1355, 1360 (9th Cir. 1995). For these reasons, I concluded that, under the immigration laws, it was possible for Diaz–Nin to have had the intent to remain in the United States indefi-

---

6. The parties explained at the hearing that there were difficulties in obtaining Diaz–Nin's complete INS record. The date of the IJ's order finding her deportable, therefore, is not before the Court.

7. Unlike the temporary visa statute (8 U.S.C. § 1101(a)) in *Graham*, 998 F.2d at 196, the agriculture worker amnesty program (8 U.S.C. § 1255a) does not require that an alien intend to return to a foreign domicile. In *Graham*, an alien entered the United States on a nonimmigrant, temporary worker visa under 8 U.S.C. § 1101(a), which required that the holder have "a residence in a foreign country which he [or she] has no intention of abandoning." *Id.* Thus, the Court determined that the time he spent as a temporary worker could not accrue toward his seven years needed for section 212(c), as he could not have complied with the requirements of the temporary visa statute *and* maintained an intent to stay in the United States permanently. *Id.*

nitely as of October 27, 1988, when she applied for temporary resident status. *See id.* at 1360–61 (holding that alien could establish lawful domicile for section 212(c) purposes as of the date she applied to be a temporary resident under the amnesty program); *Castellon–Contreras v. INS*, 45 F.3d 149, 154 (7th Cir.1995) (same). Because the BIA dismissed her appeal some nine years later, on October 23, 1997, I concluded that Diaz–Nin had established the requisite seven years at the time the BIA dismissed her appeal,[8] thus making her eligible for section 212(c) relief.

■ At the hearing, Diaz–Nin testified that she had three children who are United States citizens. She also established that she had lived in the United States for an uninterrupted period of some nine years and that she had close ties to the community. Persuasively, the Supreme Court noted in *St. Cyr* that, before the 1996 amendments to the immigration laws, aliens like Diaz–Nin "had a significant likelihood of receiving [section] 212(c) relief," and that more that fifty-one percent of such aliens who sought section 212(c) relief were granted waivers. 533 U.S. at 359 n. 5, 378, 121 S.Ct. 2304. Because (1) Diaz–Nin established that she had an unrelin-

quished domicile in the United States for seven years, (2) consideration of the requisite negative and positive factors indicated that Diaz–Nin would have been a strong candidate for section 212(c) relief, and (3) a great number of aliens were ultimately granted such relief before the enactment of the AEDPA and IIRIRA, I found that there was a strong likelihood that she would have been granted a waiver under section 212(c) and was seriously prejudiced by the BIA's erroneous dismissal of her appeal.[9] Accordingly, in the absence of any evidence from the government to suggest that Diaz–Nin would have been denied section 212(c) relief, I granted Diaz–Nin's motion to suppress the deportation order.

### ORDER

For the reasons given from the bench and in the accompanying memorandum, it is **ORDERED** that Javiela Diaz–Nin's motions to suppress the deportation order [docket entries # 23 and # 35] are hereby **GRANTED.**

---

8. The accrual of the seven years does not end until the deportation decision is administratively final. *See Katsis v. INS*, 997 F.2d 1067, 1076 (3d Cir.1993) (affirming BIA's denial of section 212(c) relief when alien moved to reopen proceedings after the BIA affirmed IJ's deportation order), *cert. denied*, 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994); *see also Dabone v. Karn*, 763 F.2d 593, 598–99 (3d Cir.1985) (interpreting section 212(c) in the context of an exclusion proceeding).

9. In determining whether to grant section 212(c) relief, the IJ will balance factors adverse to the alien against factors favorable to the alien. *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978). The adverse factors include

(1) the nature and circumstances of the conduct that led to a finding of deportabili-

ty; (2) the presence of additional significant violations of immigration laws; (3) the existence of a criminal record, its nature, recency, and seriousness; and (4) other evidence indicating bad character or undesirability as a permanent resident.

*Id.* The favorable factors include

(1) family ties within the United States; (2) lengthy residence in the United States (particularly when residence began when the alien was young); (3) hardship to the alien and her family if the deportation occurs; (4) service in the Armed Forces; (5) a history of employment; (6) existence of property or business ties; (7) evidence of value and service to the community; (8) proof of genuine rehabilitation if a criminal record exists; and (9) other evidence attesting to an alien's good character.

*Id* at 584–85, 1978 WL 36472.