**UNITED STATES of America,**

v.

**Jose Agustin TORRES.**

**No. CRIM.A.02–427.**

United States District Court,
E.D. Pennsylvania.

May 21, 2003.

Anita D. Eve, U.S. Attorney's Office, Philadelphia, PA, for U.S.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Jose Agustin Torres ("defendant") is charged with illegal reentry after deportation in violation of 8 U.S.C. §§ 1326(a) and (b)(2). The defendant has filed the instant motion seeking to dismiss the indictment (doc. no. 7). In support of his motion, the defendant alleges that because the immigration judge at his deportation hearing incorrectly applied the provisions of section 440(d) of the Anti–Terrorism and Effective Death Penalty Act and the Illegal Immigration Reform and Immigration Responsibility Act of 1996 retroactively, his underlying deportation order cannot serve as the basis of a criminal prosecution for illegal reentry.

The court finds that, under the uncontested facts of this case, the retroactive application of section 440(d) did not deprive defendant of the opportunity for judicial review of the decision of the immigration judge and that the entry of his deportation order was not fundamentally unfair. Accordingly, the defendant's motion to dismiss the indictment will be denied.[1]

## I. BACKGROUND

The facts of this case are uncontested. The defendant, a native and citizen of the Dominican Republic, was admitted to the United States as a Lawful Permanent Resident ("LPR") on July 14, 1989. On August 30, 1993, the defendant was convicted of a felony drug trafficking offense in the Superior Court of New Jersey, Middlesex County. At some point thereafter, the defendant voluntarily returned to the Dominican Republic. On May 23, 1998, the defendant attempted to reenter the United States. As a result of his 1993 felony-drug conviction,[2] the defendant was detained by INS officials at the point of entry and placed in removal proceedings.

In July of 1998, a removal hearing was held before an immigration judge ("IJ"). During the removal hearing, at which the defendant was not represented by counsel, the IJ informed the defendant that he had a right to appeal the outcome of his deportation proceedings, which the defendant voluntarily waived. The defendant was not informed, however, of the availability of any form of discretionary administrative relief.[3] Following the removal hearing, the IJ ordered that the defendant be removed to the Dominican Republic, and on

---

1. This memorandum analyzes and explains the decision issued from the bench on February 25, 2003. An order dismissing the motion was entered on February 27, 2003.

2. Originally, as indicated in the notice to appear ("NTA"), initiation of defendant's removal proceedings was based upon allegations by the INS that defendant had been convicted of a drug trafficking offense in New Jersey, on March 23, 1998. At defendant's removal hearing, however, the NTA was amended to reflect defendant's 1993 conviction. This court was not given any explanation as to why the NTA was amended. Neither party, however, has taken issue with the amendment of the NTA. Thus, the court need not concern itself therewith.

3. The court was not provided with an official transcript of defendant's deportation hearing. The defendant, however, has provided a transcript created by a private translation and transcription company. Neither party has objected to the court's reliance thereon.

September 2, 1998, the defendant was so removed. On February 25, 2002, the defendant was found present in the United States without authorization. The instant indictment for illegal reentry ensued.

Before the court is defendant's motion to dismiss the indictment. In his motion, the defendant challenges the validity of the deportation order that serves as the basis, and satisfies an essential element, for the charge of illegal reentry. Specifically, the defendant contends that at the time of his 1998 deportation hearing, the IJ and INS officials were under the legally incorrect view that the defendant was barred from obtaining discretionary relief from deportation.[4] Based on this incorrect view, the IJ and the INS failed to advise him of the possible availability of certain forms of administrative relief from removal, and that, as a result, he was denied the opportunity for meaningful judicial review of the IJ's removal decision. The argument is two-fold. One, the retroactive application of the 1996 Amendments, in and of itself, effectively deprived him of the opportunity for meaningful judicial review of his removal proceedings. Two, because he was not advised that he could seek discretionary relief, his waiver of the right to a direct appeal (of which he was advised) was not the result of considered judgment. Finally, the defendant argues that the failure to advise him of his right to seek discretionary relief under section 212(c)

rendered his removal proceedings fundamentally unfair.[5]

## II. DISCUSSION

### A. History of Relief from Removal under Section 212(c)

A brief history of the area is helpful in placing the defendant's argument in context. Prior to 1996, when an LPR faced deportation, INA § 212(c) ("section 212(c)") provided for waiver of deportation, a discretionary form of administrative relief from removal, for an alien who had "a lawful unrelinquished domicile [within the United States] of seven consecutive years," unless the alien "has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least five years."[6] 8 U.S.C. § 1182(c). In 1996, however, Congress acted to substantially limit the availability of relief from removal through the passage of section 440(d) of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA") (collectively referred to as "the 1996 Amendments"). The 1996 Amendments essentially barred an alien convicted of an aggravated felony or a controlled substance violation from obtaining discretionary relief from remov-

---

4. *See infra* Part II. A.

5. Subsequent to the filing of the instant motion, the defendant also filed a motion to reopen his original deportation proceedings with an immigration court in Oakdale, Louisiana. The immigration court denied defendant's motion as untimely. *See In the matter of Jose Torres,* File No. A420 94 784 (Immigration Court, Oakdale, Louisiana Jan. 6 2003).

6. It is undisputed, for the purposes of this opinion, that prior to 1996, defendant was

eligible for discretionary relief under INA § 212(c). Moreover, courts have recognized that during the period between 1989 and 1994, section 212(c) applications were granted more often than not. *See, e.g., Yesil v. Reno,* 973 F.Supp. 372, 381 (S.D.N.Y.1997). Accordingly, the court will assume for the purposes of this opinion, that there is a substantial likelihood that had the defendant's deportation proceeding taken place before 1996, he would have been granted section 212(c) relief.

al.[7] *See* 8 U.S.C. § 1229b(a)(3).

Aliens who had pled guilty to aggravated felonies prior to the enactment of the 1996 Amendments, and who faced deportation proceedings thereafter, challenged the application of the 1996 Amendments to their cases. They argued, in part, that they entered guilty pleas to aggravated felonies prior to the passage of the 1996 Amendments with the expectation that, despite their convictions, they would remain eligible for discretionary relief. Therefore, it would be unfair and unconstitutional to retroactively apply the 1996 Amendments to them. In *In re Soriano,* 21 I & N Dec. 516, Int. Dec. 3289, 1996 WL 426888 (BIA 1996/AG 1997), this argument was rejected by the Attorney General. Many courts, including the Third Circuit, agreed with the Attorney General and applied the 1996 Amendments retroactively to aliens with pre–1996 convictions. *See DeSousa v. Reno,* 190 F.3d 175, 186–87 (3rd Cir.1999).

In 2001, however, the United States Supreme Court overruled *Soriano. See INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). In *St. Cyr,* the Supreme Court held that retroactive application of the 1996 Amendments to preclude the availability of section 212(c) discretionary relief to aliens who pled guilty to aggravated felonies or certain felony drug offenses prior to the enactment of the 1996 Amendments is unconstitutional. *Id.* at 326, 121 S.Ct. 2271.

To put the matter in perspective, prior to the enactment of the 1996 Amendments, an alien who was removable on the grounds of having been convicted of an aggravated felony or certain drug related offenses was eligible for discretionary relief from the Attorney General. However,

after the enactment of the 1996 Amendments, as construed by the Attorney General and most courts, such relief was no longer available. In 2001, the Supreme Court, in *St. Cyr,* changed the legal landscape by holding that the 1996 Amendments could not be applied retroactively to preclude an alien who was convicted before 1996 from obtaining discretionary relief. Not addressed by *St. Cyr,* and present here, is the question of whether an alien, such as the defendant in this case, who was convicted of an aggravated felony before the enactment of the 1996 Amendments, but was, as a consequence of the 1996 Amendments, erroneously barred from seeking discretionary relief before *St. Cyr* was decided (the period between 1996 and 2001), is entitled to challenge the validity of the underlying removal order as an element of a criminal prosecution.

### B. *The Validity of the Underlying Deportation Order*

In 1987, the United States Supreme Court instructed that where an alien's prior deportation provides the underlying basis for an illegal reentry prosecution, a collateral challenge to the underlying deportation order and proceedings must be permitted when the underlying proceeding was "fundamentally unfair" and "effectively eliminate[d] the right of the alien to obtain judicial review." *United States v. Mendoza–Lopez,* 481 U.S. 828, 834, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Nine years later, Congress effectively codified the *Mendoza–Lopez* test. Under Title 8, United States Code, Section 1326(d), an alien-defendant, being prosecuted for illegal reentry, may not challenge the validity of the underlying deportation order, unless

---

**7.** It is undisputed that under the language of the 1996 Amendments, the defendant would

be barred from obtaining discretionary relief.

the alien demonstrates that: 1) the alien exhausted all administrative remedies that were available to obtain relief against the order; 2) the proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and 3) the entry of the deportation order was fundamentally unfair. 8 U.S.C. § 1326(d). In the case at bar, administrative exhaustion is not contested. Accordingly, the court need only address whether the defendant has demonstrated that he was denied an opportunity for judicial review and that the entry of the order was fundamentally unfair.[8]

1. *The proceedings at which the deportation order was issued did not deprive the defendant of the opportunity for meaningful judicial review.*

The United States Congress and the Supreme Court have instructed that an adjudication made in an administrative proceeding cannot play a critical role in the imposition of a criminal sanction, unless the criminal defendant was afforded the opportunity for meaningful judicial review of the relevant proceeding. *See* 8 U.S.C. § 1326(d); *Mendoza–Lopez,* 481 U.S. at 837–38, 107 S.Ct. 2148.

The defendant's argument that he was denied the opportunity for meaningful judicial review is two-fold. First, he asserts that based on the state of the law at the time of his removal, any form of judicial review, while technically available, was in essence, meaningless. His second argument is that as a result of the IJ's failure to inform him of the availability of discretionary relief under section 212(c), his

waiver of his right to appeal was not the result of considered judgment, and that, therefore, he was deprived of the opportunity for meaningful judicial review.

On the first issue, whether, because under the current law, courts were incorrectly interpreting the 1996 Amendments as precluding discretionary relief under section 212(c) to aliens such as defendant, defendant was deprived of his right to meaningful review of the IJ's decision, courts have reached conflicting results on various legal bases. Some courts have held that because, under the applicable law, the 1996 Amendments acted as an absolute statutory barrier to the availability of section 212(c) relief to aliens convicted of one or more aggravated felonies or felony drug offenses, an appeal of the IJ's denial of relief would have been futile and illusory. Thus, under these conditions, aliens, such as the defendant, were effectively denied meaningful judicial review. *See, e.g., United States v. Ojeda–Escobar,* 218 F.Supp.2d 839, 845 (W.D.Tex.2002) ("There was no opportunity for meaningful judicial review of the deportation order"); *United States v. Diaz–Nin,* 221 F.Supp.2d 584, 588–89 (D.Vi.2002) (stating that "it would have been futile for [defendant] to have sought relief in the courts ... effectively, [defendant] was denied judicial review of any kind").

Other courts, to the contrary, have held that where the aliens could have filed a direct appeal of the IJ's removal decision and were so advised, but did not, it is immaterial whether or not, under the substantive law, a direct appeal would have

---

**8.** It should be noted here that because section 212(c) provides for a form of administrative relief, and not judicial review, the IJ's failure to inform the defendant as to its availability does not, in and of itself, give rise to a cognizable challenge under 8 U.S.C. § 1326(d). Thus, the court must determine whether, un-

der the circumstances, the IJ's failure to inform the defendant of section 212(c) relief resulted in fundamentally unfair removal proceedings and a deprivation of the opportunity for judicial review thereof. *See United States v. Adame–Salgado,* 214 F.Supp.2d 853, 860 (N.D.Ill.2002).

been successful. *See Alvarenga–Villalobos v. Ashcroft,* 271 F.3d 1169 (9th Cir. 2001); *United States v. Sullivan,* 2002 WL 31819611 (E.D.Pa. Dec.12, 2002); *United States v. Hernandez–Rodriguez,* 170 F.Supp.2d 700 (N.D.Tex.2001).

A third approach finds that even when an alien is completely precluded from filing a direct appeal, such as under certain provisions of IIRIRA or under the reasoning of the first approach described above, the right of the alien to seek habeas corpus relief pursuant to 28 U.S.C. § 2241 absolutely satisfies the requirement that the alien be afforded the opportunity for meaningful judicial review of his administrative proceedings. *See United States v. Gonzalez–Roque,* 301 F.3d 39 (2d Cir. 2002). In *Gonzalez–Roque,* the alien-defendant had been ordered deported under the transitional provisions of IIRIRA, which precluded appeals by removable aliens who had been convicted of aggravated felonies or certain felony drug offenses. *Gonzalez–Roque,* 301 F.3d at 49 & n. 9. Accordingly, Gonzalez–Roque was statutorily denied an opportunity to have the decision of the IJ reviewed on direct appeal. *Id.* Nonetheless, the Second Circuit held that because the alien-defendant could have filed a petition for writ of habeas corpus, under 28 U.S.C. § 2241, but did not, he had not been denied the opportunity for meaningful judicial review. *Id.* at 49–50.

Yet, a fourth approach, a blend of the latter two approaches, albeit without discussing each of the approaches specifically, appears to have been followed by the Third Circuit panel in a recent unpub-

lished opinion.[9] *See United States v. Fellows,* 50 Fed.Appx. 82 (3d Cir.2002). In *Fellows,* the alien-defendant had been convicted of attempted illegal reentry. *Id.* at 83. On appeal, Fellows sought to collaterally challenge the deportation order upon which his conviction for attempted illegal reentry was based. *Id.* Fellows argued that because the IJ and INS refused to consider whether he could obtain discretionary relief from removal under section 212(c), his due process rights were violated. *Id.* at 83–84. Accordingly, Fellows argued, as does the defendant here, that under 8 U.S.C. § 1326(d) and *Mendoza–Lopez,* his underlying deportation order could not serve as the basis of a criminal prosecution for attempted illegal reentry. *Id.* at 84–85. In affirming the decision of the district court denying relief, the Third Circuit held that because the alien-defendant could have taken a direct appeal of the IJ's removal decision, but chose not to (second approach), and because he could have sought habeas relief, but chose not to (third approach), he was not deprived of the opportunity for meaningful judicial review. *Id.* at 85 (holding that there was no denial of the opportunity for judicial review where the alien "had the right to seek judicial review of the deportation order [by filing an appeal] although he did not exercise that right, and he chose not to file a [petition] for habeas corpus [by filing a section 2241 petition] after the BIA affirmed the deportation order"). In other words, according to the Third Circuit, the availability of a direct appeal and of habeas corpus relief, to the alien-defendant, satisfies the requirement that the adminis-

9. Although unpublished opinions lack precedential value, citation to unpublished opinions is not prohibited under the Third Circuit Local Appellate Rules, and therefore, such opinions may serve as persuasive authority in this circuit. *See* L.A.R. 28.3(a) (3d Cir.2003); I.O.P. 5.3 (3d Cir.2003); *see also City of New-*

*ark v. U.S. Dep't of Labor,* 2 F.3d 31, 33 n. 3 (3d Cir.1993) ("Although we recognize that this unpublished opinion lacks precedential authority, we nonetheless consider persuasive its evaluation of a factual scenario identical to the one before us in this case").

trative adjudication which forms the predicate for the criminal prosecution be subject to meaningful judicial review.

Applying the rationale of *Fellows* to this case, given that defendant in this case was advised of his right to appeal, but chose to waive it, and that he could have, but never filed a petition for habeas relief under 28 U.S.C. § 2241, the court concludes that he was not deprived of an opportunity for meaningful judicial review of his removal proceedings.[10]

■ The second issue is whether the defendant's waiver of his right to appeal was the result of considered judgment. The defendant relies heavily on *Mendoza–Lopez*, in which the Supreme Court held that where an individual's waiver of his right to appeal the outcome of an administrative proceeding was not the result of considered judgment, that individual has been deprived of the opportunity for judicial review. *Mendoza–Lopez*, 481 U.S. at 839–40, 107 S.Ct. 2148. Here, the defendant contends that because the IJ did not advise him of the availability of discretionary relief under section 212(c), the defendant's waiver of his right to take a direct appeal of the IJ's removal decision was not the result of considered judgment.

The matter presently before the court, however, is distinguishable from *Mendoza–Lopez*. In *Mendoza–Lopez*, the alien-defendants were, in fact, eligible for dis-

cretionary relief from removal and the failure to advise them of this right necessarily affected the calculus of their decisionmaking as to whether or not to appeal. In this case, under the then applicable law, the defendant was not eligible for discretionary relief. Logically, and unlike *Mendoza–Lopez*, telling the defendant that, although, technically, he could petition for discretionary relief, he was not eligible for the remedy, could not have materially affected the defendant's calculus as to whether or not to file an appeal of the IJ's decision. Accordingly, the court finds that the defendant's waiver of his right to appeal, under these circumstances, was "the result of considered judgment," *Id.* at 840, 107 S.Ct. 2148, and that the failure to advise the defendant of the availability of discretionary relief from removal did not affect the defendant's calculus as to whether to file a direct appeal. Therefore, the immigration proceedings at which his deportation order was issued, did not deprive him of the opportunity for judicial review of the determination by the IJ.

### 2. The entry of the deportation order was not fundamentally unfair.

■ In order to challenge the validity of the underlying deportation order in a criminal prosecution for illegal reentry, the defendant must also demonstrate that the entry of the deportation order was "funda-

---

**10.** The defendant provides no evidence, apart from the above arguments, that he was precluded, as a result of his removal proceedings, from petitioning for a writ of habeas corpus under 28 U.S.C. § 2241. To the contrary, the defendant relies heavily on the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). *St. Cyr*, however, confirms that the defendant did have an opportunity for judicial review of his removal proceedings available to him, and that such review would have been not only meaningful, but potentially successful. Enrico St. Cyr's removal proceedings

began on April 10, 1997, shortly after the enactment of the 1996 Amendments and over a year before the commencement of removal proceedings against the defendant in this case. *See St. Cyr*, 533 U.S. at 293, 121 S.Ct. 2271. Unlike the defendant, however, St. Cyr did not abandon his right to administrative and judicial review. Instead, after his request for discretionary relief was denied based on the 1996 Amendments, St. Cyr filed a petition for habeas relief, arguing that the 1996 Amendments should not be applied retroactively, and found a receptive audience in the United States Supreme Court. *See id.*

mentally unfair." 8 U.S.C. § 1326(d). The defendant argues that his deportation proceedings were fundamentally unfair based on the Supreme Court's ruling in *St. Cyr.* To put it another way, defendant appears to be arguing that the IJ's failure to advise him of the availability of discretionary relief from removal, given the state of the law at that time, rendered his removal proceedings fundamentally unfair.

The contour of the legal issue raised by defendant is not yet fully developed and there are at least two lines of cases relevant to defendant's argument. On the one hand, some courts have held that the determination of whether the entry of a deportation order was "fundamentally unfair" turns on the question of whether or not the defendant's procedural due process rights have been violated.[11] *See Mendoza–Lopez,* 481 U.S. at 838–39 nn. 15, 17, 107 S.Ct. 2148; *see also Fellows,* 50 Fed. Appx. at 85 (because in *Mendoza–Lopez,* "procedural defects required the dismissal of the indictments" and the defendant here "suffered no such procedural defect," the defendant's removal proceedings were not fundamentally unfair); *Sullivan,* 2002 WL 31819611, at *6 ("the fundamental fairness test concerns only procedural due process"); *Hernandez–Rodriguez,* 170 F.Supp.2d at 704 ("The Supreme Court and the Fifth Circuit have held that fundamental fairness is solely an issue of procedural due process"). Under this approach, these courts have held that the inquiry into the substantive law applied at the alien's deportation hearing is not relevant to the question of fundamental fairness. *See Fellows,* 50 Fed.Appx. at 84–85; *Sulli-*

*van,* 2002 WL 31819611, at *6; *Hernandez–Rodriguez,* 170 F.Supp.2d at 704.

On the other hand, at least two district courts have held that fundamental unfairness "may also result when the removal order is based on an erroneous application of the law." *Ojeda–Escobar,* 218 F.Supp.2d at 844; *see also, Diaz–Nin,* 221 F.Supp.2d at 590 ("Because the BIA dismissed [defendant's] appeal based on an erroneous retroactive application of the 1996 laws, I determined that [defendant's] deportation proceeding was fundamentally unfair").[12] These courts appear to rely primarily on the Supreme Court's holding in *St. Cyr. See Diaz–Nin,* 221 F.Supp.2d at 590. *St. Cyr,* however, was a habeas case, and addressed the substantive unfairness of retroactively applying the 1996 Amendments to individuals who had plead guilty to aggravated felonies before IIRIRA and the AEDPA were enacted. *St. Cyr,* 533 U.S. at 292–293, 121 S.Ct. 2271. When the issue before the court involves the mandates of section 1326(d), however, reliance on *St. Cyr,* which concerns a related, but distinct issue, is misplaced.

■ The court agrees, based on the language of *Mendoza–Lopez,* that the Supreme Court intended the issue of "fundamental unfairness" to be examined from a procedural due process standpoint, and not as a matter of substantive law. *See Mendoza–Lopez,* 481 U.S. at 838–40, 107 S.Ct. 2148. While the Supreme Court declined to "enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review," the Court's language clearly sounded in the

---

11. Some courts have also incorporated into the fundamental unfairness analysis the question of whether the defendant suffered prejudice. *See, e.g., United States v. Benitez–Villafuerte,* 186 F.3d 651, 658 (5th Cir.1999).

12. It should be noted that the court in *Ojeda–Escobar* cites only to another case from the same district and to dicta within the dissent of *Mendoza–Lopez, see Ojeda–Escobar,* 218 F.Supp.2d at 844 & n. 8, and that the court in *Diaz–Nin* draws the above conclusion without citation to any authority.

language of procedural due process and does not implicate a concern over the correctness of the substantive law applied to the aliens removal proceedings. *See id.* at 839 n. 17, 107 S.Ct. 2148. Applying this approach, the court notes that the process which an alien facing deportation is due requires only that he be provided notice of the charges, a hearing and a fair opportunity to be heard. *See Kwong Hai Chew v. Colding,* 344 U.S. 590, 597–98, 73 S.Ct. 472, 97 L.Ed. 576 (1953). The defendant does not contend that adequate process was lacking with regards to these requirements.

The defendant argues that because the IJ erroneously applied the 1996 Amendments to his deportation proceedings, in violation of *St. Cyr,* entry of the deportation order was fundamentally unfair. This is a challenge to the substantive law that was applied to his deportation hearings. Via this argument, the defendant is "improperly attempting to turn the fundamental fairness inquiry, which is procedural in nature, into an expanded, substantive inquiry." *Hernandez–Rodriguez,* 170 F.Supp.2d at 703–04. "A legal error, however, in which the 1996 [Amendments] were applied retroactively to [the defendant's] deportation hearing 'does not rise to the level of a due process violation and therefore [does] not render the deportation hearing fundamentally unfair.'" *Sullivan,* 2002 WL 31819611, at *6 (citing *Hernandez–Rodriguez,* 170 F.Supp.2d at 704) (third alteration in original). Accordingly, the court finds that the entry of the defendant's deportation order was not fundamentally unfair, as defined in *Mendoza–Lopez.*

### III. CONCLUSION

Based on the foregoing analysis, the court concludes that the proceedings at which the defendant's deportation order

was issued did not improperly deprive him of the opportunity for judicial review and that the entry of the deportation order was not fundamentally unfair. Accordingly, the defendant's motion to dismiss the indictment (doc. no. 7) is denied.