FILED
United States Court of Appeals
Tenth Circuit

June 18, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 18-6198 |
| | (D.C. No. 5:18-CR-00078-C-1) |
| ROGELIO GARCIA-GALVAN, a/k/a Rogelio Galvan Garcia, | (W.D. Oklahoma) |
| Defendant - Appellant. | |

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Rogelio Garcia-Galvan appeals from his conviction for illegal re-entry into the

United States after removal in violation of 8 U.S.C. § 1326(a), for which the district

court sentenced him to twenty-nine months' imprisonment. Mr. Garcia-Galvan

pleaded guilty to the charge of illegal re-entry but, prior to sentencing, moved to

withdraw his guilty plea, arguing the Department of Homeland Security's 2008

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Federal Rules of Appellate Procedure at 32.1 and Tenth Circuit Rule 32.1.

Notice to Appear was invalid and thus voided the immigration court's 2008 removal order for lack of jurisdiction. The district court denied the motion to withdraw, holding Mr. Garcia-Galvan was not entitled to relief because he had waived the right to notice and appeal in his 2008 proceedings and his challenge to those proceedings did not satisfy any of the collateral attack conditions of 8 U.S.C. § 1326(d). Mr. Garcia-Galvan timely appealed.

We hold that Mr. Garcia-Galvan's challenge is subject to the collateral attack conditions of 8 U.S.C. § 1326(d) and fails because he has not satisfied the first condition set forth in § 1326(d)(1). Therefore, we AFFIRM the district court.

## I.     BACKGROUND

In 2003, Mr. Garcia-Galvan arrived in the United States without being admitted or paroled. Five years later, on May 12, 2008, the Department of Homeland Security ("DHS") served Mr. Garcia-Galvan with a Form I-862 notice to appear ("2008 NTA"), which ordered him to appear for his removal hearing "on a date to be set at a time to be set." *See* ROA, Vol. I at 35–36. The same day, Mr. Garcia-Galvan filed a Stipulated Request for Order and Waiver of Hearing ("2008 Waiver"), in which he "agreed to a written order for removal as a final disposition" and "waived his right to appeal the order of removal." *Id.* at 42. On May 14, 2008, an immigration judge reviewed the 2008 Waiver and ordered Mr. Garcia-Galvan removed ("2008 Order"). Mr. Garcia-Galvan was removed from the United States shortly thereafter.

Mr. Garcia-Galvan re-entered the United States on January 25, 2011, and, as a result, was convicted in the Western District of Oklahoma of illegal re-entry pursuant

2

to 8 U.S.C. § 1326(a). The district court sentenced Mr. Garcia-Galvan to twenty-four months' imprisonment, and, after serving that sentence, Mr. Garcia-Galvan was again removed from the United States on July 17, 2014. Mr. Garcia-Galvan once more re-entered the United States on December 23, 2017, and the DHS notified him of its intent to reinstate the 2008 Order.

On April 3, 2018, a federal grand jury returned an indictment charging Mr. Garcia-Galvan with illegal re-entry pursuant to 8 U.S.C. § 1326(a). Although he originally pleaded guilty to the indictment, Mr. Garcia-Galvan moved to withdraw his guilty plea, arguing the immigration court's 2008 Order was void for lack of subject-matter jurisdiction. In essence, he argued the DHS's 2008 NTA did not contain the date and time for his subsequent hearing and was, therefore, an invalid charging document that could not vest jurisdiction in the immigration court under 8 C.F.R. §§ 1003.13 and 1003.14(a). Mr. Garcia-Galvan's argument was based on the Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). In that case, the Court held that a "notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under [8 U.S.C.] section 1229(a),' and so does not trigger the stop-time rule" for purposes of establishing ten years of continuous presence in the United States for cancellation of removal. *Pereira*, 138 S. Ct. at 2114 (quoting 8 U.S.C. § 1229(d)(1)(A)).

The district court denied Mr. Garcia-Galvan's motion "because the underlying premise for it, the alleged invalidity of the Notice to Appear, d[id] not provide [him] entitlement to relief." ROA, Vol. I at 176. First, the district court noted that the facts

of Mr. Garcia-Galvan's case were significantly different from those in *Pereira* and that "[he] unquestionably had notice of his right to a hearing and unequivocally waived any further notice or hearing and agreed to deportation." *Id.* at 177. Alternatively, the district court held that Mr. Garcia-Galvan failed to meet any of the statutory requirements for collaterally attacking an underlying removal order. *See* 8 U.S.C § 1326(d). Mr. Garcia-Galvan timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.    DISCUSSION

Mr. Garcia-Galvan argues the district court abused its discretion in denying his motion to withdraw his guilty plea. In general, we review the district court's denial of a motion to withdraw a guilty plea "for abuse of discretion." *United States v. Sandoval*, 390 F.3d 1294, 1297 (10th Cir. 2004). But where the district court's denial of the motion is based on its underlying inquiry into the merits of a § 1326(d) collateral attack, we must review that inquiry de novo. *See id. at* 1297–98.

Here, the district court denied Mr. Garcia-Galvan's motion because "the underlying premise for it . . . d[id] not provide [him] entitlement to relief." ROA, Vol. I at 176. The court reasoned that his 2008 Waiver and, alternatively, his failure to demonstrably meet any of the collateral attack requirements of § 1326(d), precluded the collateral attack. Mr. Garcia-Galvan challenges both of the district court's grounds for denial of his motion. However, we need only address the second ground—dismissal based on the collateral attack conditions of § 1326(d)—to resolve this appeal.

**A.** *Whether Mr. Garcia-Galvan's challenge must be made subject to § 1326(d)*

Mr. Garcia-Galvan argues that he "is not required to meet 8 U.S.C. § 1326(d)'s collateral attack requirements" because he is attacking the subject-matter jurisdiction of the immigration court, which "can never be waived." Appellant's Op. Br. at 11–13. We find this argument unconvincing. Even assuming arguendo that *Pereira* mandates an NTA include date and time in order for jurisdiction to vest with the immigration court—a question which we have not yet answered in the Tenth Circuit and which we do not resolve here—Mr. Garcia-Galvan must comply with the conditions of § 1326(d) to collaterally attack his 2008 removal order.[1]

In general, an order is not subject to collateral attack based on alleged lack of subject-matter jurisdiction. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152–53 & n.6 (2009) (recognizing a court's subject-matter jurisdiction was not subject to collateral attack where the parties "were given a fair chance to challenge" subject-matter jurisdiction in the original case). But in illegal re-entry prosecutions, the "Fifth Amendment protects [a] noncitizen's right to challenge" an underling removal order the

---

[1] Courts are divided on whether this requirement would impact an immigration court's subject-matter jurisdiction. *Compare United States v. Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5013522, at *6 n.4 (D. Kan. Oct. 15, 2018) (holding regulations requiring date and time on NTA are "analogous to service of process in federal court" implicating "personal jurisdiction," not subject-matter jurisdiction); *United States v. Briones-Herrera*, No. CR-18-214-D, 2018 WL 5315211, at *2–3 (W.D. Okla. Oct. 26, 2018) (observing that "[o]ne could reasonably question the correctness of th[e] view" that an NTA implicates subject-matter jurisdiction); *with Hernandez-Perez v. Whitaker*, 911 F.3d 305, 310–11 (6th Cir. 2018) (treating *Pereira* argument regarding lack of date and time on NTA as implicating subject-matter jurisdiction).

government proffers as evidence to meet the elements of illegal re-entry, "even years after the time for appeal has passed." *United States v. Almanza-Vigil*, 912 F.3d 1310, 1316 (10th Cir. 2019) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–39 (1987)). Accordingly, Congress has provided an avenue to collaterally attack a removal order through 8 U.S.C. § 1326(d).

Mr. Garcia-Galvan's argument, even if based on subject-matter jurisdiction, is an attempt to invalidate the removal order and is therefore subject to the requirements of 8 U.S.C. § 1326(d). Under that provision, "an alien may not [collaterally] challenge the *validity of the deportation order*" unless the alien meets three conditions. *See* 8 U.S.C. § 1326(d). The statute does not exempt subject-matter jurisdiction challenges from this requirement, and we see no reason to depart from the clear statutory language. *See United States v. Millan-Torres*, 139 F. App'x 105, 109 (10th Cir. 2005) (unpublished) (expressing doubt about the notion of a "broader exception for all collateral attacks based on jurisdictional failings," noting that "[n]o federal court has yet adopted [that] view"). Therefore, we conclude Mr. Garcia-Galvan must satisfy § 1326(d)'s conditions to mount his attack.

## B. *Whether Mr. Garcia-Galvan can satisfy the conditions of § 1326(d)*

We next consider whether Mr. Garcia-Galvan can satisfy the three conditions of § 1326(d). To collaterally attack an underlying removal order, an alien must show that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *see also Almanza-Vigil*, 912 F.3d at 1316. The alien bears the burden of "prov[ing] each of § 1326(d)'s elements." *United States v. Adam-Orozco*, 607 F.3d 647, 651 (10th Cir. 2010). Here, the district court found that Mr. Garcia-Galvan failed to "demonstrate any of these three" conditions. ROA, Vol. I at 177. We need not look beyond the first to determine the district court did not abuse its discretion.

Mr. Garcia-Galvan failed to exhaust his administrative remedies, as required by § 1326(d)(1), for two reasons: first, he waived his right to appeal the immigration judge's 2008 Order. "An alien who knowingly waives the right to appeal an immigration judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)." *United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005). Second, even if Mr. Garcia-Galvan had not waived his right to appeal, he has failed to exhaust his administrative remedies because he never raised his argument before the Board of Immigration Appeals ("BIA"). We have repeatedly recognized that "[n]eglecting to take an appeal to the BIA constitutes a failure to exhaust administrative remedies as to any issue that could have been raised." *Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007); *see also Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1017 (10th Cir. 2007); *cf.* Dan Kesselbrenner & Lory D. Rosenberg, *Immigration Law & Crimes* § 5:25 (Dec. 2018 Update) ("An appeal from an IJ to the BIA, without more, generally suffices to satisfy an exhaustion requirement." (quoting *United States v. Diaz-Nin*, 221 F. Supp. 2d 584, 587 (D. V.I. 2002))).

In response, Mr. Garcia-Galvan asserts that exhaustion "would have been futile" because, at the time of the 2008 Order, a notice to appear had "legal effect regardless of whether the date and time" were included in the document. ROA, Vol. I at 12–14 (internal quotation marks omitted). But "futility does not excuse a failure to exhaust when administrative exhaustion is required by statute," as it is here. *United States v. Contreras-Cabrera*, 766 F. App'x 674, 2019 WL 1422627, at *2 (10th Cir. 2019) (unpublished); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Moreover, we have "explicitly rejected the position that it is futile to lodge an objection before an administrative body simply because the body has precedent which contradicts the party's position." *Gilmore v. Weatherford*, 694 F.3d 1160, 1169 (10th Cir. 2012) (internal quotation marks omitted). Thus, the fact that the BIA would have likely rejected Mr. Garcia-Galvan's argument does not excuse him from the administrative exhaustion requirement under the first prong of § 1326(d).

In sum, even assuming Mr. Garcia-Galvan's attack is appropriately a question of subject-matter jurisdiction—which we do not decide—he unquestionably failed to raise this question before the BIA and, thus, did not exhaust his administrative remedies. *See Sidabutar*, 503 F.3d at 1118. As such, Mr. Garcia-Galvan's collateral attack fails on the first prong of § 1326(d), and the district court did not abuse its discretion in denying Mr. Garcia-Galvan's Motion to Withdraw Guilty Plea.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge